# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DYNAMIC SPORTS NUTRITION, LLC,** | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 4:15-CV-02645 |
| **HI-TECH PHARMACEUTICALS, INC.,** | § § § | |
| *Defendant.* | § § | |

---

### PLAINTIFF'S FIRST AMENDED COMPLAINT

---

TO THE HONORABLE U.S. DISTRICT JUDGE ATLAS:

**Dynamic Sports Nutrition, LLC** (hereinafter "Plaintiff" or "DSN") files this First Amended Complaint against Defendant **Hi-Tech Pharmaceuticals, Inc.** ("HTPI" or "Defendant"). In addition to its original claim for declaratory judgment of non-infringement of trademark rights against HTPI, DSN herein further asserts claims against HTPI for unfair competition and false and misleading advertising. Inasmuch as DSN is filing this Amended Complaint within 21 days after serving its Original Complaint, leave of court is not necessary. FED. R. CIV. P. 15(a)(1)(B).

# I.
# PARTIES

1.     Plaintiff Dynamic Sports Nutrition, LLC ("DSN") is a Texas limited liability company with its principal place of business in the Houston Division of the Southern District of Texas.

2.     Defendant Hi-Tech Pharmaceuticals, Inc. ("HTPI") is a Georgia corporation with its principal place of business in Gwinnett County, Georgia.  HTPI may be served with process by serving its registered agent for service of process, Jared R. Wheat, at its registered office located at 6015-B Unity Drive, Norcross, GA 30071.

# II.
# JURISDICTION & VENUE

3.     The Court has subject matter jurisdiction over the claims brought herein under 28 U.S.C. § 1332 because the parties are residents of different states, and Plaintiff seeks damages of more than $75,000.  In addition, the Court has subject matter jurisdiction under 28 U.S.C. § 1331 in that one of the causes of action herein arises under federal statute – the Lanham Act and the Designer Anabolic Steroid Control Act of 2014.

4.     The Court has personal jurisdiction over HTPI because it has maintained minimum contacts with the State of Texas sufficient to subject it to personal jurisdiction consistent with due process under the Fourteenth Amendment to the United States Constitution.  HTPI has purposefully availed itself of the benefits and protections of Texas by establishing minimum contacts with Texas, and the Court's exercise of jurisdiction over HTPI does not offend traditional notions of fair play and substantial justice.  Defendant HTPI

has alleged that a DSN, a domiciliary of Texas, has infringed allegedly valid trademarks owned by HTPI by, among other things, selling infringing products to residents of Texas and elsewhere. In addition, HTPI has advertised and sold products to Texas residents in a manner that constitutes unfair competition and false advertising under, and in violation of, federal and state law.

5.      Venue is proper in the Houston Division of the Southern District of Texas under 28 U.S.C. § 1391(b)(1-3) because a substantial part of the events giving rise to the causes of action asserted herein took place in the Houston Division of the Southern District of Texas, because Plaintiff has its principal place of business in this Division and this District, and because Defendant is subject to this Court's personal jurisdiction with respect to the actions asserted in this lawsuit.

## III.
## BACKGROUND FACTS

6.      DSN, a company organized and existing under Texas law with its principal place of business in the Houston Division of the Southern District of Texas, develops and sells safe, natural and innovative nutritional and dietary supplements which, when taken as directed, are designed to promote healthy living. DSN has spent significant resources to research, develop and market its products, and to ensure it maintains its competitive advantages.

**A.**    **Facts Related to DSN's Declaratory Judgment Claims.**

7.    One of the products DSN has been selling for the last ten years is called "D-anabol 25," and DSN has used that mark in commerce since 2005.

8.    On September 11, 2015, HTPI's CEO Jared Wheat ("Wheat") sent an email to DSN threatening to cause HTPI to sue DSN for allegedly infringing on HTPI's mark "Dianabol" through the sale of DSN's "D-anabol 25" product. DSN's managing member responded and pointed out salient facts to demonstrate why DSN believed it could continue selling its "D-anabol 25" product and that DSN's product did not infringe upon whatever rights HTPI claimed to have.  In response, Wheat sent another email on behalf of HTPI in which HTPI threatened to sue DSN, only this time, it was accompanied by a cease a desist letter, purportedly written by an in-house counsel of HTPI, in which HTPI gives DSN a week to stop sales of its products and demands $100,000, among other demands.  In the cease and desist letter, HTPI expressly invokes not only the Lanham Act, but contends that DSN has violated the Racketeer Influenced and Corrupt Organizations Act.

9.    Inasmuch as DSN does not intend to cease the sale of its products using the "D-anabol" mark, a substantial controversy exists between the parties who have adverse legal interests as shown by all the circumstances, and HTPI's two written threats to sue DSN constitute the affirmative act necessary to provide an actual controversy as required by Article III of the United States Constitution and 28 U.S.C. § 2201.  *See MedImmue, Inc. v. Genentech, Inc.*, 548 U.S. 118, 127 (2007).

10.     HTPI has clearly threatened to sue DSN under two federal statutes and there is no possible inequity to HTPI by bringing this action now.  Given these facts, the Court should exercise is discretionary jurisdiction over the claims set forth herein under the factors set forth in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994); s*ee also Sherwin–Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003); *Daisden v. I'm Ready Productions, Inc.*, 804 F.Supp.2d 549, 552 (S.D. Tex. 2011) (Lake, J.) (holding that declaratory judgment is an appropriate means of determining intellectual property rights when: (1) the party seeking declaratory judgment has real and reasonable apprehension of litigation, and (2) the party seeking declaratory judgment has engaged in a course of conduct that brings it into adversarial dispute with its opponent); *Young v. Vannerson*, 612 F.Supp.2d 829, 845-46 (S.D. Tex. 2009) (Rosenthal, J.) (finding "case or controversy" requirement satisfied for declaratory judgment act purposes where alleged infringer had not even started selling allegedly infringing product but had received threat of litigation from owner of allegedly infringed mark); *American Univ. System, Inc. v. American University*, 858 F.Supp.2d 705, 711-12 (N.D. Tex. 2012) (Lindsay, J.) (holding that the *Trejo* factors weighed in favor of retaining jurisdiction over Plaintiff's claim for a declaration of non-infringement with respect to Defendants' alleged trademarks given the absence of a parallel state proceeding involving the subject matter of this dispute and because Defendants accused Plaintiff of trademark infringement and threatened to sue Plaintiff in three separate writings which invoked the Lanham Act).  In short,  DSN is entitled to bring this declaratory judgment action in federal court rather than wait to see if HTPI ever made good on its threats

to sue. *Sherwin–Williams*, 343 F.3d at 396 (citing *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 505 (5th Cir. 1988) (noting that one purpose of a declaratory judgment action is to allow potential defendants to resolve a dispute without waiting to be sued).

11.     The facts of the case will demonstrate that DSN in no way infringes upon any rights allegedly owned by HTPI.  First, DSN's mark, "D-anabol 25" was, upon information and belief, used in commerce before the "Dianabol" mark.  Second, the evidence will show that HTPI's "Dianabol" mark had been abandoned at the time DSN began the sale of its "D-anabol 25" product and thus, it is no longer valid or enforceable.  Third, there has been no actual confusion by consumers in the market between DSN's and HTPI's product, nor will there be sufficient evidence of a likelihood of confusion.  Finally, HTPI either knew, or should have known, about DSN's use in commerce of its "D-anabol 25" mark for at least nine years, leading to a bar on any claim of infringement due to laches, waiver and the expiration of applicable statutes of limitation as to any other cause of action that HTPI might care to bring.  DSN has been selling its product D-anabol 25 in the same manner since it went to market and has not substantially changed the manner in which it has sold that product.  Moreover, the evidence will show that HTPI has abandoned its "Dianabol" mark through failures to police despite actual knowledge of alleged infringement.

**B.     Facts Related to DSN's Claim for Unfair Competition and False and Misleading Advertising.**

12.     In addition to the foregoing, DSN has become aware that HTPI is making false or misleading statements in conjunction with its marketing, sale and distribution of products, including dietary and nutritional supplements.  This false advertising has proximately injured

DSN's commercial interests and sales of its own products in that HTPI's deception of consumers has, upon information and belief, caused consumers to withhold trade from DSN.

13.     Moreover, in violation of the Designer Anabolic Steroid Control Act of 2014, HTPI has been marketing or otherwise promoting some of its products to suggest that consuming them will promote muscle growth or other pharmacological effects similar to that of testosterone or steroids, and then selling such products to the public.  According to the Designer Anabolic Steroid Control Act of 2014, if a substance is "marketed or otherwise promoted in any manner that suggesting that consuming it will promote muscle growth or any other pharmacological effect similar to testosterone," then it shall be considered an illegal anabolic steroid.  Public Law 113-260, Section 2(a)(C)(i)(II) (codified at 21 U.S.C. § 802(41)(C)(i)(II)).  By marketing such products and selling them to the public in violation of the DASCA, HTPI is violating federal law and proximately harming DSN's commercial interests and the sales of DSN's own products, which are sold in full compliance with the DASCA, in that HTPI's deception of consumers, upon information and belief, causes consumers to withhold trade from DSN in favor of HTPI's products.

14.     Examples of what DSN, upon information and belief, contends are false, misleading or improper statements that HTPI makes in violation of law to sell its Dianabol product are as follows:

- "Natural Steroidal Anabolic and Anti-Proteolytic Formulation";

- "The active compounds in Dianabol® signal muscles to snatch up more amino acids from the blood and then use them to create muscle protein at a faster rate through increased protein synthesis.";

- "The compounds in Dianabol® also tell muscles to hang on to amino acids already within muscle by decreasing muscle-wasting activities within the muscle, creating a protein-sparing metabolism, and thus maintaining an anabolic state during times when normal protein breakdown occurs."; and

- The product label, which can be viewed at http://www.hitechpharma.com/products/ms_dianabollabel.htm, says that Dianabol is the "World's Most Potent Natural Steroidal Product Available Without a Prescription!"

[*See* **Exhibit 1** or see http://www.hitechpharma.com/products/ms_dianabol.htm].

15.    Examples of what DSN, upon information and belief, contends are false, misleading or improper statements that HTPI makes in violation of statutes or the law with respect to sales of HTPI's Sustanon 250 product include the following:

- "Bodybuilding's Most Anabolically-Potent, Single-Dose Tablet!";

- "Sustanon 250™ is a Hi-Tech Muscle & Strength supplement that really thrusts bodybuilding supplementation into a new era with the most anabolically-potent, single-dose tablet ever created for bodybuilders!";

- "Among its numerous obscure anabolic compounds, Sustanon 250™ contains the highest dosage of pro hormones to be found anywhere!";

- "Not only does this technology permit for the inclusion of a much higher concentration of total active compounds, but it also works to provide for safe passage of the inner core's anabolic ingredients into the bloodstream and then on to targeted muscle cells.";

- "These compounds are the three most prominent non-hormonal anabolic agents that have been in use by elite Russian athletes for nearly 40 years."; and

- The product label, which can be viewed at http://www.hitechpharma.com/products/ms_sustanonlabel.htm, says that Sustanon 250 "Incorporates 11 State-of-the-art anabolic agents in their most bioavailable form."

[*See* **Exhibit 2** or see http://www.hitechpharma.com/products/ms_sustanon.htm].

16.     Examples of what DSN, upon information and belief, contends are false, misleading or improper statements that HTPI makes in violation of statutes or the law with respect to HTPI's marketing and sale of if its Bulasteron product include the following:

- "The Most Scientifically Advanced Nutraceutical Formulation for Testosterone Enhancement!";

- "For all Men to Support Enhanced Testosterone Levels";

- "Several studies have documented the ability of a potent Tribulus terrestris extract (protodioscin) to enhance the production of LH, which is the direct hormonal trigger for testosterone production.";

- "Unlike most low potency Tribulus products on the market, Bulasterone™ contains the highest standardized version of Bulgarian Tribulus terrestris extract available, which consists of 60% protodioscin, 70% furastanol saponins, and 90% total saponins content, resulting from multiple extraction processes to ensure optimal potency.";

- "Bulasterone™ also contains sodium D-aspartic acid, which studies suggest supports enhanced levels of LH and testosterone using a daily serving amount of 3 grams, which is the exact dosage use in Bulasterone™.";

- "Additionally, Bulasterone™ incorporates 6-keto-diosgenin (25R spirostan-5a-diol-6-one-3-one) undecanoate, 5-methyl-7-methoxyflavone, and also turkesterone, which is one of the primary active constituents in Rhaponticum carthamoides extract (RCE). Turkesterone has been used by elite Russian athletes since the early 1970s to enhance the anabolic activity of testosterone, specifically by supporting magnification of the translational phase of protein synthesis.";

- "Hi-Tech ensures optimal potency of these ingredients by using dosages that meet or exceed the amount that scientists have determined is required to produce an efficacious response. Hi-Tech also ensures optimal potency by precisely standardizing all herbal-based ingredient extracts to the correct active constituents."; and

- The product label, which can be viewed at http://www.hitechpharma.com/products/ms_bulasteronelabel.htm,, says that Bulasterone is the "World's Strongest Testosterone Booster!"

[*See* **Exhibit 3** or see http://www.hitechpharma.com/products/ms_bulasterone.htm].

17.     Examples of what DSN, upon information and belief, contends are false, misleading or improper statements that HTPI makes in violation of statutes or the law in the marketing and sale of its Phosphagen product include the following:

- "As the years passed, Hi-Tech funded an abundance of its own internal research into the matter; and continued to scour the scientific journals for creatine-based scientific revelations.";

- "Without the contribution of these synergistic creatine ingredients, the phosphagen system quickly becomes bottlenecked during periods of intense muscular contraction, well before the potential contribution of creatine can be fully realized. Thus, the bodybuilder who wisely chooses Phosphagen™ over another typical creatine product will have the extra amount of muscle fuel available to complete the one additional rep required to pull the trigger for muscles to grow";

[*See* **Exhibit 4** or see http://www.hitechpharma.com/products/ms_phosphagen.html].

18.     Examples of what DSN, upon information and belief, contends are false, misleading or improper statements that HTPI makes in violation of applicable law to promote the marketing and sale of HTPI's NitroPro product include the following:

- "The Most Advanced Protein Supplement For Promoting, Accelerating, and Sustaining Muscle Protein Synthesis";

- "NitroPro™ is the first scientifically-based protein ever developed. NitroPro™ is, literally, 'Hi-Tech' protein and is crucial to the body's ability to build quality muscle tissue and enhance strength.";

- "75% Peptide-Bound Amino Acids (PBAAs) – PBAAs are absorbed more quickly and increase nitrogen retention up to 16 times, as compared to free-form amino acids (FFAs).";

- "NitroPro® is also the first protein to utilize a 75% PBAA composition formulation with a net protein or nitrogen utilization score of 92 out of 100.";

- "NitroPro® utilizes a proprietary hydrolyzing technique to precise degrees."; and

- The product label, which can be viewed at http://www.hitechpharma.com/products/ms_nitroprolabel.htm, says that NitroPro "Possesses AN/TN Ratio 500% greater than other protein - eviscerating the competition!" and that NitroPro "Promotes anabolism by shuttling amino acids essential for protein syntheses directly into muscle tissue!"

[*See* **Exhibit 5** or see http://www.hitechpharma.com/products/ms_nitropro.htm].

19.     Examples of what DSN, upon information and belief, contends are false, misleading or improper statements that HTPI makes in violation of statutes or the law in the marketing and sale of its Estrogenex 2nd Generation Phosphagen product include the following:

- "Any nutraceutical compound or nutraceutical product that has a positive influence on anabolic activity and muscle cell metabolism has both bodybuilding and anti-aging healthcare benefits.  So whether you are an aging male looking for the most ideal anti-aging supplement available to restore healthy testosterone to estradiol ratios, or a bodybuilder looking for an estrogen-squashing, testosterone-unleashing, muscle-building supplement for the anabolic support required to achieve a hard, lean physique, Estrogenex® 2nd Generation is your solution!"; and

- "75% Peptide-Bound Amino Acids (PBAAs) – PBAAs are absorbed more quickly and increase nitrogen retention up to 16 times, as compared to free-form amino acids (FFAs)."

[*See* **Exhibit 6** or see http://www.hitechpharma.com/products/ms_estrogenex.htm].

20.     Examples of what DSN, upon information and belief, contends are false, misleading or improper statements that HTPI makes in violation of statutes or the law in the marketing and sale of its Anavar product include the following:

- "Nitric oxide (NO) sports nutrition has become the largest sports nutrition product category. Yet, despite dozens of 'advancements' in NO supplementation, traditional NO sports nutrition still remains flawed for one fundamental reason. This flaw can easily be detected by simply inspecting the formulations in NO products across-the-board throughout the sports nutrition industry. The formulations in these products demonstrate a failure on the part of other supplement companies to understand and address the most efficacious means to serve L-arginine up on a platter for the production of NO, which is to incapacitate the arginase enzyme.";

- "With the exception of Hi-Tech Pharmaceuticals, no other supplement company has figured out how to tackle the arginase problem head-on... to take arginase out of the NO equation!";

- "Anavar® also contains efficacious dosages of several key anabolic compounds, including three of the most potent anabolic compounds ever researched by Russian scientist V.N. Syrov and his team of colleagues, who are responsible for many of the greatest advances in herbal-based nutraceutical sports nutrition. These interesting compounds are 25R, spirostan-5a-diol-6-one-3-one (ecdybolin) (which demonstrates a 33:1 anabolic to androgenic ratio), the 6-keto derivative of diosgenin (6-keto-diosgenin), and 20-hydroxyecdysone decanoate isolated from Rhaponticum carthamoides extract.";

- "They have been shown to significantly enhance protein synthesis void of any androgenic pathway activity, which makes them exceptionally desirable to bodybuilders and strength athletes.";

- "In fact, athletes from Russia and other Eastern Bloc countries have been incorporating these powerful compounds into their arsenal of anabolic agents for nearly 40 years.";

- "For additional anabolic thrust, and also for a pronounced boost in anti-proteolytic (protein-sparing) activity, Anavar® incorporates several esters of prasterone, the most powerful pro hormone available.";

- "Anavar® is the gateway to accelerating and enhancing post-training recovery, hyper-activating protein synthesis, remarkably accentuating muscular endurance, developing way freaky muscular pumps, and laying the foundation for rock-hard muscle density!"; and

- The product label, which can be viewed at http://www.hitechpharma.com/products/ms_anavarlabel.htm, says that Anavar is the "World's First and Only Controlled-Released Natural Steroidal Anabolic Agent," and that Anavar "Elevates Testosterone Level Throughout the Day."

[*See* **Exhibit 7** or see http://www.hitechpharma.com/products/ms_anavar.htm].

21.     Examples of what DSN, upon information and belief, contends are false, misleading or improper statements that HTPI makes in violation of statutes or the law in the marketing and sale of its Glucozene-RX product include the following:

- "For bodybuilders, athletes, and anyone trying to build muscle, Glucozene-Rx™ helps ignite the muscle-building, anabolic power of insulin by unleashing its nutraceutical compounds to make insulin receptors more sensitive to the effects of insulin."

[*See* **Exhibit 8** or see http://www.hitechpharma.com/products/ms_glucozene.htm

22.     Examples of what DSN, upon information and belief, contends are false, misleading or improper statements that HTPI makes in violation of statutes or the law in the marketing and sale of its Somatomax and Somatomax Ultra Concentrate products include the following:

- "All previous attempts by other supplement companies to make headway using phenibut (a very expensive compound) in a feel-good, sleep promoting supplement have failed, simply because these products contained pathetically low, cost-cutting dosages that disarmed the products of any benefit.  Hi-Tech, on the other hand, spared no expense to ensure that more than efficacious dosages of this cornerstone ingredient were large and in charge in Somatomax® Ultra Concentrate.";

- "Phenibut is a GABA phenomenon because it easily crosses the blood-brain barrier and, due to its affinity for some GABA receptors, initiates a flurry of GABA activity in the brain.";

- "Somatomax® Ultra Concentrate has all the same components as the original formula but with the addition of ß-phenyl-?-Aminobutyric acid Ethyl Ester Hcl and Gamma-Amino-beta-hydroxybutyric acid (GABOB). Phenibut (beta-phenyl-gamma-aminobutyric acid) was discovered in Russia during the 1960's. It is a derivative of the neurotransmitter GABA and is capable of passing the blood brain barrier.";

- The product label for Somatomax, which can be viewed at http://www.hitechpharma.com/products/ms_somatomaxlabel.htm, says that Somatomax "Increases growth hormone stimulation"; and

- The product label for Somatomax Ultra Concentrate, which can be viewed at http://www.hitechpharma.com/products/ms_somatomaxultralabel.html, says that Somatomax Ultra Concentrate "Increases growth hormone stimulation" and "Increases Muscle Mass & Reduces Body Fat".

[*See* **Exhibit 9** or see   http://www.hitechpharma.com/products/ms_somatomax.htm and http://www.hitechpharma.com/products/ms_somatomaxultra.html].

23.     HTPI's false and misleading statements on the part of HTPI have proximately injured DSN in that HTPI's deception of consumers, upon information and belief, causes consumers to withhold trade from DSN in favor of HTPI's competing products.

24.     It should come as no surprise to anyone that HTPI engages in such methods of marketing and selling its products.  After all, both Wheat and HTP have a long history of illegal conduct in the sale of its products.  For instance, in February 2009, Wheat was convicted of violations of federal criminal law stemming from illegally selling knockoff prescription drugs over the Internet without requiring prescriptions, and U.S. District Judge

Jack Camp of the Northern District of Georgia sentenced Wheat to 50 months in prison. [*See* **Exhibit 10** at pp. 1-5]. HTPI was also convicted of conspiracy to commit mail and wire fraud and of introducing and delivery unapproved new and adulterated drugs into interstate commerce, in violation of 18 U.S.C. § 1341, 1343, and 371, and 21 U.S.C. §§ 331(a) and (d), 333(a)(2), 351 and 355(a). [**Exhibit 10** at pp. 6-9]. In the factual basis for the pleas, it was reported that Wheat and HTPI admitted to operating a manufacturing facility in Belize that made generic versions of Xanax, Valium, Ambien, Vioxx, Zoloft, Viagra and Cialis and selling them over the internet without requiring a prescription. [*Id.* at pp. 10]. Wheat and HTPI were also ordered to forfeit $3,000,000 as a result of their criminal activity. [**Exhibit 10** at pp. 12-14]. This was also not his first criminal case, having been sentenced to 24 months in the custody of the Federal B.O.P. after violating conditions of supervised release following an earlier federal criminal conviction. [**Exhibit 11**].

25. HTPI's brush with the law was not limited to its internet narcotics selling scheme. In a lawsuit brought against HTPI and Wheat by the Federal Trade Commission, Senior United States District Judge Charles A. Parnell, Jr. of the Northern District of Georgia issued a Final Judgment and Permanent Injunction finding that HTPI and Wheat had made false claims and misrepresentations in advertising and selling weight loss products and erectile dysfunction products. [*See* **Exhibit 12**]. Judge Parnell ordered HTPI and Wheat to refrain from making further false claims and misrepresentations, to issue appropriate warnings on certain of their products, and to pay a judgment in the amount of $15,882,436.00. [*See* **Exhibit 12**]. On May 14, 2014, Judge Parnell found that HTPI and

Wheat had violated the previous Final Judgment and Permanent Injunction by continuing to make false claims and misrepresentations about those products, and by failing to issue the court-ordered warning on certain of their products. [*See* **Exhibit 13**]. The district court ordered disgorgement of $40,120,950 in compensatory sanctions. [*See* **Exhibit 13**]. Although the Eleventh Circuit vacated the finding of contempt and the monetary sanctions by finding that the district court improperly used a collateral estoppel theory to support its judgment, the case is not over, and remains pending before Judge Pannell today.

26.    Wheat and HTPI have also managed to hit the radar of the U.S. Food and Drug Administration. The FDA seized millions of dollars' worth of one of HTPI's nutritional supplements which the FDA contends contains a prohibited substance known as 1, 3 dimethylamylamine (DMAA), and the propriety of that action is still pending in the Northern District of Georgia. [**Exhibit 14**]. The FDA has also issued a warning letter to HTPI demanding that it cease distributing supplements containing a substance known as BMPEA because the products are allegedly misbranded. [**Exhibit 15**].

27.    All conditions precedent to the assertion of the causes of action below, and the remedies sought below, have occurred or been waived.

## V.
## CAUSES OF ACTION

### Count 1: DECLARATORY JUDGMENT OF NON-INFRINGEMENT

28.    DSN repeats and realleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

29.     There is substantial and continuing controversy between DSN and HTPI, and a declaration of rights is both necessary and appropriate to establish that DSN is not infringing on HTPI's trademark rights, if any.  Thus, DSN seeks a judicial declaration pursuant to 28 U.S.C. § 2201 and 2202 that it has not infringed, and does not infringe, any alleged trademarks owned by HTPI, including its "Dianabol" mark, and that the prior and continued sale of its "D-anabol 25" product does not violate HTPI's rights under the Lanham Act, the Racketeer Influenced and Corrupt Organizations Act or any companion state or federal statute.

## Count 2: DECLARATORY JUDGMENT OF ABANDONMENT

30.     DSN repeats and realleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

31.     DSN also requests a judicial declaration that the "Dianabol" mark has been abandoned and is therefore no longer valid or enforceable.

## Count 3: UNFAIR COMPETITION AND FALSE AND MISLEADING ADVERTISING IN VIOLATION OF LANHAM ACT

32.     DSN repeats and realleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

33.     Defendant's sale of dietary and nutritional supplements in commerce throughout the United States as set forth above constitutes a false designation of origin, false description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendant's goods and/or commercial activities at issue, in violation of 15 U.S.C. § 1125(a).

Via its website, Defendant misrepresents the nature, characteristics, and qualities of its goods, in violation of 15 U.S.C. § 1125(a).

34.     Defendant's sale of the Infringing Products in commerce throughout the United States, as well Defendant's false statements about its products in commercial advertising or promotion, as set forth above constitutes a false designation of origin, false description of fact, or false or misleading representation of fact, which in commercial advertising or promotion is likely to misrepresent the nature, characteristics, and qualities of goods and/or commercial activities at issue, in violation of 15 U.S.C. § 1125(a).

35.     Defendant's marketing or promoting of its products in any manner suggesting that consuming them will promote muscle growth or any other pharmological effect similar to that of testosterone means that such products are considered anabolic steroids pursuant to the Designer Anabolic Steroid Control Act of 2014.  Defendant's marketing and selling of such products violates the Designer Anabolic Steroid Control Act of 2014, and further constitutes unfair competition.

## VI.
## PRAYER AND REQUEST FOR RELIEF

WHEREFORE, DSN requests that the Court:

a.      Enter a declaratory judgment that DSN has not infringed upon any intellectual property rights that HTPI owns, including any trademark rights in the "Dianabol" under the Lanham Act or any companion state statute, including the Georgia Deceptive Trade Practices Act and Georgia unfair competition statutes;

b.      Enter a declaratory judgment that DSN has the right to continue the use of the phrase "D-anabol" due to the abandonment of HTPI's "Dianabol" mark at the time DSN began selling its products using the "D-anabol" mark;

c.    Enter a declaratory judgment that DSN has not violated state or federal law through the sale of its products using the "D-anabol" mark, including the Racketeer Influenced and Corrupt Organizations Act;

d.    Enter a declaratory judgment that any rights HTPI had in the "Dianabol" mark have been waived through HTPI's acts and omissions;

e.    Enter a judgment that HTPI violated 15 U.S.C. § 1125(a) and/or common law by unfairly competing and by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, and characteristics of HTPI's products;

f.    Award DSN damages adequate to compensate DSN for HTPI's conduct;

g.    Award DSN HTPI's profits obtained by HTPI as a result of HTPI's conduct;

h.    Order such damages and profits be trebled and awarded to DSN as a result of HTPI's willful, intentional and deliberate acts in violation of the Lanham Act;

i.    Provide DSN an award of reasonable attorney fees and taxable court costs as permitted by 15 U.S.C. § 1117(a) should the Court find that DSN is the prevailing party and that this was an exceptional case;

j.    Award pre-judgment and post-judgment interest on the damages at the highest amounts permitted by law;

k.    Order that all of Defendant's misleading and deceptive materials and products be destroyed as allowed under 15 U.S.C. § 1118;

l.    Order that HTPI engage in corrective advertising related to its false and misleading descriptions concerning the nature, characteristics, and qualities of its products; and

m.    Award such other relief as the Court deems just and proper.

DATE:   October 2, 2015                          Respectfully submitted,

**HICKS THOMAS LLP**
A REGISTERED LIMITED LIABILITY PARTNERSHIP

By: _____
      Stewart Hoffer (Attorney in Charge)
      Texas Bar No. 00790891
      S.D. Tex. I.D. No. 20123
      shoffer@hicks-thomas.com
      Greg Koush
      Texas Bar No. 24060113
      S.D. Texas No. 924765
      gkoush@hicks-thomas.com
      700 Louisiana, Suite 2000
      Houston, Texas 77002
      713.547.9100 (Telephone)
      713.547.9150 (Facsimile)

**ATTORNEY FOR PLAINTIFF**
**DYNAMIC SPORTS NUTRITION, LLC**