# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DYNAMIC SPORTS NUTRITION, LLC,** | § § § | |
| *Plaintiff,* | § § § | |
| **v.** | § § § | **CIVIL ACTION NO. 4:15-CV-02645** |
| **HI-TECH PHARMACEUTICALS, INC.,** | § § § | |
| *Defendant.* | § § | |

---

### PLAINTIFF'S SECOND AMENDED COMPLAINT

---

TO THE HONORABLE U.S. DISTRICT JUDGE ATLAS:

Pursuant to the Court's December 22, 2015 oral order on the record granting leave to amend, **Dynamic Sports Nutrition, LLC** (hereinafter "Plaintiff" or "DSN") files this Second Amended Complaint against Defendant **Hi-Tech Pharmaceuticals, Inc.** ("HTPI" or "Defendant").

### I.
### PARTIES

1.      Plaintiff Dynamic Sports Nutrition, LLC ("DSN") is a Texas limited liability company with its principal place of business in the Houston Division of the Southern District of Texas.

2.      Defendant Hi-Tech Pharmaceuticals, Inc. ("HTPI") is a Georgia corporation with its principal place of business in Gwinnett County, Georgia.  HTPI has

appeared in this lawsuit, but to the extent process is necessary, HTPI may be served with process by serving its registered agent for service of process, Jared R. Wheat, at its registered office located at 6015-B Unity Drive, Norcross, GA 30071.

## II.
## JURISDICTION & VENUE

3.      The Court has subject matter jurisdiction over the claims brought herein under 28 U.S.C. § 1331 in that one of the causes of action herein arises under federal statute – the Lanham Act.

4.      The Court has personal jurisdiction over HTPI because it has maintained minimum contacts with the State of Texas sufficient to subject it to personal jurisdiction consistent with due process under the Fourteenth Amendment to the United States Constitution.  HTPI has purposefully availed itself of the benefits and protections of Texas by establishing minimum contacts with Texas, and the Court's exercise of jurisdiction over HTPI does not offend traditional notions of fair play and substantial justice.  Defendant HTPI has alleged that DSN, a domiciliary of Texas, has infringed allegedly valid trademarks owned by HTPI by, among other things, selling infringing products to residents of Texas and elsewhere.

5.      Venue is proper in the Houston Division of the Southern District of Texas under 28 U.S.C. § 1391(b)(1-3) because a substantial part of the events giving rise to the causes of action asserted herein took place in the Houston Division of the Southern District of Texas, because Plaintiff has its principal place of business in this Division and

{00167495.DOCX}                                                       - 2 -

this District, and because Defendant is subject to this Court's personal jurisdiction with

respect to the actions asserted in this lawsuit.

## III.
## BACKGROUND FACTS

6.      Organized and existing under Texas law with its principal place of business

in the Houston Division of the Southern District of Texas, DSN develops and sells safe,

natural and innovative nutritional and dietary supplements which, when taken as directed,

are designed to promote healthy living.  DSN has spent significant resources to research,

develop and market its products, and to ensure it maintains its competitive advantages.

7.      One of the products DSN has been selling for the last ten years is called

"D-Anabol 25," and DSN has continuously used that mark in national commerce since

2005.

8.      On September 11, 2015, HTPI's CEO Jared Wheat ("Wheat") sent an email

to DSN threatening a lawsuit against DSN by HTPI for allegedly infringing on HTPI's

mark "Dianabol" through the sale of DSN's "D-Anabol 25" product.  At the time of the

email, HTPI did not own the trademark made the basis of the infringement claim and

therefore lacked standing or ability to sue DSN for any alleged infringement because

HTPI (whose counsel admitted on the record was a licensee of the trademark at issue)

lacks standing to sue for infringement of a licensed trademark.  *Icee Distributors, Inc. v.*

*J&J Snack Foods Corp.,* 325 F.3d 586, 598-99 (5th Cir. 2003); 15 U.S.C. § 1114 (stating

that "[a]ny person who shall, without the consent of the *registrant* [violate subsections (a)

or (b) of that section], shall be liable in a civil action *by the registrant* for the remedies

hereinafter provided." (emphasis added).   [**Exhibit A to Complaint**, Nunc Pro Tunc Assignment].   Once DSN received Wheat's email, DSN's managing member, Brian Clapp, responded and pointed out salient facts to demonstrate why DSN believed DSN could continue selling its "D-Anabol 25" product and that DSN's product did not infringe upon whatever rights HTPI claimed to have (but, in fact, did not have at the time HTPI made the threats to sue for infringement).   In response, Wheat sent another email on behalf of HTPI in which HTPI threatened to sue DSN, only this time, it was accompanied by a cease and desist letter, purportedly written by an in-house counsel of HTPI, in which HTPI gave DSN a week to stop the lawful sale of its "D-Anabol 25" product and demanded $100,000, among other demands.   In the cease and desist letter, HTPI expressly invoked not only the Lanham Act, but also alleged that DSN has violated the Racketeer Influenced and Corrupt Organizations Act.

9.     Inasmuch as DSN does not intend to cease the sale of its "D-Anabol 25" product, a substantial controversy exists between the parties who have adverse legal interests as shown by all the circumstances, and HTPI's two written threats to sue DSN (when HTPI did not have constitutionally required standing at the time) constitute the affirmative act necessary to provide an actual controversy as required by Article III of the United States Constitution and 28 U.S.C. § 2201.   *See MedImmue, Inc. v. Genentech, Inc.*, 548 U.S. 118, 127 (2007).

10.     HTPI threatened to sue DSN under two federal statutes, and there is no possible inequity to HTPI by bringing this action now.   Given these facts, the Court should exercise is discretionary jurisdiction over the claims set forth herein under the

factors set forth in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994); s*ee also Sherwin–Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003); *Daisden v. I'm Ready Productions, Inc.*, 804 F.Supp.2d 549, 552 (S.D. Tex. 2011) (Lake, J.) (holding that declaratory judgment is an appropriate means of determining intellectual property rights when: (1) the party seeking declaratory judgment has real and reasonable apprehension of litigation, and (2) the party seeking declaratory judgment has engaged in a course of conduct that brings it into adversarial dispute with its opponent); *Young v. Vannerson*, 612 F.Supp.2d 829, 845-46 (S.D. Tex. 2009) (Rosenthal, J.) (finding "case or controversy" requirement satisfied for declaratory judgment act purposes where alleged infringer had not even started selling allegedly infringing product but had received threat of litigation from owner of allegedly infringed mark); *American Univ. System, Inc. v. American University*, 858 F.Supp.2d 705, 711-12 (N.D. Tex. 2012) (Lindsay, J.) (holding that the *Trejo* factors weighed in favor of retaining jurisdiction over Plaintiff's claim for a declaration of non-infringement with respect to Defendants' alleged trademarks given the absence of a parallel state proceeding involving the subject matter of this dispute and because Defendants accused Plaintiff of trademark infringement and threatened to sue Plaintiff in three separate writings which invoked the Lanham Act). In short, DSN is entitled to bring this declaratory judgment action in federal court rather than waiting to see if HTPI would ever make good on its threats to sue. *Sherwin–Williams*, 343 F.3d at 396 (citing *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 505 (5th Cir. 1988) (noting that one purpose of a declaratory judgment action is to allow potential defendants to resolve a dispute without waiting to be sued)).

{00167495.DOCX}

11.     DSN will demonstrate that in no way does it infringe upon any rights allegedly owned by HTPI.

12.     First, DSN's mark, "D-Anabol 25," was used in commerce before HTPI's President sought to register the "Dianabol" mark.  Specifically, Wheat did not seek to register the "Dianabol" trademark until June 26, 2007:



[**Exhibit B**, U.S. PTO Application for Registration].  DSN (or its predecessor) was selling its allegedly infringing product, "D-Anabol 25," on a nationwide basis well before June 2007:



[*See*  https://web.archive.org/web/20060815134822/http://www.roidstore.com/  (showing

advertising of D-Anabol 25 as of August 15, 2006)].  DSN has continuously sold that

product on a nationwide basis since then.   Therefore, under applicable law, DSN is

permitted to continue selling its "D-Anabol 25" product even it does infringe on HTPI's

rights, since federal registration of a trademark or service mark cannot create rights and

priority over others who have previously used the mark in commerce.   15 U.S.C. §§

1057(b)(1) (stating that "…the filing of the application to register such mark shall

constitute constructive use of the mark, conferring a right of priority, nationwide in

effect, on or in connection with the goods or services specified in the registration against

any other person *except for a person whose mark has not been abandoned and who, prior*

*to such filing has used the mark*") (emphasis added); 15 U.S.C. § 1115(b)(5) (providing

alleged infringer with right to use allegedly infringing mark in any geographical area in

which alleged infringer can establish that its prior use of mark "was adopted without

knowledge of the registrant's prior use and has been continuously used by such party

{00167495.DOCX}                                        - 7 -

from a date prior to registration of the mark"); *Turner v. HMH Pub. Co.*, 380 F.2d 224, 228 (5th Cir. 1967) ("Under the Lanham Act, registration of a trademark confers only procedural advantages and does not enlarge the registrant's rights"); *Allard Enterprises, Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) ("it is the senior user who has the right to a federal registration, subject only to the prior common law rights of a junior user who has used the mark prior to the senior user's application for federal registration"); *Ward v. Knox County Bd. of Educ.*, 3:11-CV-438-TAV-CCS, 2014 WL 3368510, at *7 (E.D. Tenn. July 9, 2014), *aff'd*, 612 Fed. Appx. 269 (6th Cir. 2015); *Oliver Gintel, Inc. v. Koslow's, Inc.*, 355 F. Supp. 236, 238 (N.D. Tex. 1973) (stating that "under federal trade-mark law, the registrant is presumed to have exclusive rights in the use and development of a trade-mark and trade name subsequent to the time of registration" and because "registration of a mark…does not create or enlarge a registrant's rights" any rights belonging to a prior user "which had been obtained prior to the registration would not be extinguished thereby").   The "incontestibility status of HTPI's "Dianabol" mark does not preclude DSN from asserting this defense.  *Texas Pig Stands, Inc. v. Hard Rock Cafe Intern., Inc.*, 951 F.2d 684, 690 (5th Cir. 1992).

13.    Second, there has been no actual confusion by consumers in the market between DSN's and HTPI's product, nor will there be sufficient evidence of a likelihood of confusion.  Facts supporting this allegation include, among others, that (a) DSN is unaware of any instances of actual confusion; and (b) DSN and HTPI sell through different marketing channels, in that DSN is an online retailer who sells its products directly to the consumer, whereas HTPI, upon information and belief, sells its products as

a wholesaler to various nutritional supplement retailers.   In fact, as of the date of the

filing of this Amended Complaint, HTPI's website does not allow a retail purchase of its

products:



[See www.hittechpharma.com/merchant2/merchant/mvc?Screen-SFNT&Store_Code=HP

(visited December 22, 2015)].

14.    HTPI's claim of infringement is barred because of laches.   HTPI either

knew, or should have known, about DSN's use in commerce of its "D-Anabol 25" mark

since at least November 20, 2005, when DSN first sought to register the similar mark "D-

Anabol," but certainly by June of 2007, when HTPI sought to register its "Dianabol"

mark, it should have seen DSN's sale of its "D-Anabol 25" mark.   DSN has continuously

sold D-Anabol 25 in the nationwide market since 2006 in the same manner, and has not

substantially changed the manner in which it has sold that product since that time.

Neither HTPI nor its prior owner, Wheat, undertook any enforcement actions against

DSN (or any predecessor or affiliate) with respect to any of their alleged rights in the

"Dianabol" mark until September 2015.   These facts bar any claim of infringement due to

laches, waiver and the expiration of applicable statutes of limitation as to any other cause

of action that HTPI might care to bring.

15.     HTPI's claim of infringement is barred through its failure to police its mark, resulting in a constructive abandonment.  Upon information and belief, HTPI was actually aware of, or should have been aware of, third parties who, after HTPI's registration was filed, have (at least under HTPI's theory in this case) infringed upon the "Dianabol" mark, but HTPI failed to prosecute or otherwise protect the mark.  For instance, on May 9, 2012, Brian Clapp emailed Jared Wheat and informed him that a company selling products at www.stacklabs.com was "stepping on your Dianabol mark." Wheat responded and said, "Thanks.  I will go after them as well."  However, affiliates of www.stacklabs.com continue to advertise a Stacklabs product called "Dianabal-Dbol." [See        https://prosbodybuilding.com/dbol-steroid-alternative-dianabal-from-stack-labs/ (visited December 30, 2015)].

16.     Other examples like this exist.  For instance, Brian Clapp sent Wheat a separate email on May 9, 2012 informing Wheat of a company called www.roid-shop.com (also known as ebuysteroids.com and ibuysteroids.com) who was selling a product that used the Dianabol name in selling a dietary supplement.  Even as late as December 20, 2015, that company is still selling a dietary supplement product called "Dianabol" – the exact name of the trademark at issue:



[See http://www.roid-shop.com/dianabol.html (visited December 30, 2015)]. On May 10, 2012, Brian Clapp emailed Wheat and informed him that a company operating at www.musclelabusa.com was selling a nutritional supplement product called "Dianabol." Wheat even emailed Clapp back and told him that he would be sending a cease and desist letter out, and copied a message from HTPI's counsel where he admits to lax enforcement practices:



As of December 30, 2015, that same site shows that same product for sale:



[*See* https://musclelabsusa.com/ (visited December 30, 2015)].

17.     On May 10, 2012, Brian Clapp emailed Wheat and informed him that a company operating at www.zoelabs.com was selling a nutritional supplement product called "Dianobol," which, at least under HTPI's theory of infringement articulated in this case, would also be an infringement as well.  As of December 30, 2015, that same site shows that same product for sale:



[*See* www.zoelabsordering.com (visited December 30, 2015)].

18.     Other sites continue to sell a nutritional supplement product called "Dianabol" or its substantial equivalent which, at least under HTPI's theory of infringement articulated in this case, would be an infringement as well.     [*See* http://anabolic.co/steroids/dianabol/, http://www.roidsmall.net/oral-steroids-sale-508/dianabol-11536.html, http://www.dianabolelite.com/, http://crazymassonline.com/dianabol-for-sale/ (visited on December 30, 2015)].

19.     These acts and omissions, and others like it, can (and have) resulted in abandonment, or what the Fifth Circuit has called, "constructive abandonment" of HTPI's "Dianabol" mark.  *See, e.g., Denison Mattress Factory v. Spring-Air Co.*, 308 F.2d 403, 409 (5th Cir. 1962) (stating "[i]f the registrant of a trademark allows or persists in allowing others to misuse his rights, he may, after an appropriate time, find that he has lost his rights through constructive abandonment."); *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 316 (6th Cir. 2001) (noting that trade dress

owner's failure to prosecute infringers "is relevant to determining both (1) the strength of [the owner's] trade dress for purposes of establishing likelihood of confusion and (2) whether [the owner] has abandoned its trade dress rights in the lounge chair and ottoman."). Other cases describe the failure to police the mark as causing the loss of rights through having transformed the mark into a generic mark which has lost its significance as an indicator of origin. *See Sweetheart Plastics, Inc. v. Detroit Forming, Inc.,* 743 F.2d 1039, 1048 (4th Cir. 1984) ("Evidence of a trademark owner's failure to prosecute infringers is relevant to a determination of the defense of abandonment only where such failure amounts to the mark's losing significance as an indication of source."). Failure to enforce an alleged mark or trade dress against third-party users for a long period of time may also preclude a finding of irreparable injury for purposes of seeking a preliminary injunction. *Warner-Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389, 12 U.S.P.Q.2d 1884, 1887 (D.N.J. 1989) (denying request for preliminary injunction where plaintiff failed for six years to take action against third-party users of its trade dress and such evidence "severely undercuts plaintiff's claim that it creates irreparable damage.").

20.    All conditions precedent to the assertion of the causes of action below, and the remedies sought below, have occurred or been waived.

## V.
## CAUSES OF ACTION

### Count 1: DECLARATORY JUDGMENT OF NON-INFRINGEMENT

21.    DSN repeats and realleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

22.     There is a substantial and continuing controversy between DSN and HTPI, and a declaration of rights is both necessary and appropriate to establish that DSN is not infringing on HTPI's trademark rights, if any.  Thus, DSN seeks a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that it has not infringed, and does not infringe, any alleged trademarks owned by HTPI, including its "Dianabol" mark, and that the prior and continued sale of its "D-Anabol 25" product does not violate HTPI's rights under the Lanham Act, the Racketeer Influenced and Corrupt Organizations Act or any companion state or federal statute.

## Count 2: DECLARATORY JUDGMENT OF LACHES/ABANDONMENT/

23.     DSN repeats and realleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

24.     DSN also requests a judicial declaration that HTPI has lost the right to enforce its alleged rights to the "Dianabol" mark through the acts and omissions as set forth in Paragraphs 14 and 15 above.

25.     DSN also requests a judicial finding that it began using its "D-Anabol 25" mark in nationwide commerce before HTPI sought registration of its "Dianabol" mark and thus, DSN has the right to use its mark as a prior user irrespective of HTPI's registration.

## VI.
## PRAYER AND REQUEST FOR RELIEF

WHEREFORE, DSN requests that the Court:

a.      Enter a declaratory judgment that DSN has not infringed upon any intellectual property rights that HTPI owns, including any trademark rights

in the "Dianabol" mark under the Lanham Act or any companion state statute, including the Georgia Deceptive Trade Practices Act, the Georgia RICO statute and/or Georgia unfair competition statutes;

b.    Enter a declaratory judgment that DSN has the right to continue the use of the phrase "D-Anabol" in its business;

c.    Enter a declaratory judgment that DSN has not violated state or federal law through the sale of its products using the "D-Anabol" mark, including the Racketeer Influenced and Corrupt Organizations Act;

d.    Enter a declaratory judgment that any rights HTPI had in the "Dianabol" mark have been abandoned through HTPI's acts and omissions, or that HTPI's acts and omissions bar its claims through the doctrine of laches;

e.    Provide DSN an award of reasonable attorney fees and taxable court costs as permitted by 15 U.S.C. § 1117(a) should the Court find that DSN is the prevailing party and that this was an exceptional case; and

f.    Award such other relief as the Court deems just and proper.

DATE:  December 30, 2015          Respectfully submitted,

**HICKS THOMAS LLP**
A REGISTERED LIMITED LIABILITY PARTNERSHIP

By: _____
        Stewart Hoffer (Attorney in Charge)
        Texas Bar No. 00790891
        S.D. Tex. I.D. No. 20123
        shoffer@hicks-thomas.com
        Greg Koush
        Texas Bar No. 24060113
        S.D. Texas No. 924765
        gkoush@hicks-thomas.com
        700 Louisiana, Suite 2000
        Houston, Texas 77002
        713.547.9100 (Telephone)
        713.547.9150 (Facsimile)

**ATTORNEY FOR PLAINTIFF**
**DYNAMIC SPORTS NUTRITION, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served to the parties listed below on this 30th day of December, 2015, either via electronic means using Court's ECF noticing system or via United States first class mail, postage prepaid.

Arthur W. Leach
The Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
Art@ArthurWLeach.com

Kent A. Schaffer
JPMorganChase Bank Building
712 Main Street, Suite 2400
Houston, Texas 77002
kentschaffer@gmail.com

**Stewart Hoffer**