IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HI-TECH PHARMACEUTICALS, INC., a Georgia corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION FILE NO. 1:16-CV-00949-MHC |
| DYNAMIC SPORTS NUTRITION, LLC d/b/a/ ANABOLIC RESEARCH, a Texas Limited Liability Company; PBB TRADEMARK HOLDINGS, LLC, a Texas Limited Liability Company, and BRIAN CLAPP, an individual, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF FACT AND LAW IN SUPPORT THEREOF**

Paul F. Wellborn III
Georgia Bar No. 746720
Kelly O. Wallace
Georgia Bar No. 734166
WELLBORN & WALLACE, LLC
1175 Peachtree St., NE, Suite 300
Atlanta, Georgia 30361

Phone:     (404) 815-9595
Fax:       (404) 815-9957
E-mail:    pete@wellbornlaw.com
           kelly@wellbornlaw.com

Defendants Dynamic Sports Nutrition, LLC ("DSN"), PBB Trademark Holdings, LLC, and Brian Clapp ("Clapp") (the "DSN Defendants") file this Motion for Summary Judgment as to all claims asserted by Plaintiff Hi-Tech Pharmaceuticals, Inc. ("High-Tech") and show as follows:

## FACTS

## I.   PLAINTIFF HI-TECH PHARMACEUTICALS, INC.

### A.   <u>Supposed Business Operations (Legal Dietary Supplements)</u>

High-Tech claims to be in the business of manufacturing and selling "high quality dietary supplement products" including "a number of products designed for muscle and body building." *(First Amended Complaint [DE 62] ¶¶ 2 and 13).* At issue herein are Dianabol (to which Hi-Tech's trademark claims pertain) <u>and</u>, due to Hi-Tech's false advertising claims, its other "muscle and strength products in the dietary supplement sub-markets of testosterone boosters, muscle-gainers, muscle preservation products, and legal hormone boosters[,] [and its] weight loss aid products." *(Id. ¶ 53; Ex. A.1, Hi-Tech Products).*

Despite repeated claims by Hi-Tech that it never "compares or equates its products to anabolic steroids," "Dianabol" is, in fact, the generic name of one of the most popular anabolic steroids of all time. *(Ex. B., Wheat Depo. at 64:4-10 (denying steroid comparisons); Discussion of dianabol[1] below).* Hi-Tech markets

---

[1] As used herein, Dianabol with a capital "D" refers to the Hi-Tech supplement;

Dianabol by declaring that "the anabolic steroid Dianabol was called the King of Steroids . . . the King has now returned . . . [Dianabol] lives up to its name and reputation." *(Ex. A.2, King of Steroids Ad)*. Hi-Tech intentionally destroyed any possible distinction between Dianabol and dianabol, declaring that the "**name remains the same.**" *(Id. at 4 (emphasis added))*. Hi-Tech's marketing of Dianabol is, in fact, consistent with its admitted practice of co-opting generic names of anabolic steroids as the names for its strength-building supplements. *(Ex. B, Wheat Depo, at 137:15-18)*.

## B.   Actual Business Operations (Illegal Drugs & Activities)

### 1.   Illegal Sale of Anabolic Steroids and Other Drugs

Hi-Tech and its founder Jared Wheat are digital age drug dealers, spiking their products with anabolic steroids and other controlled substances and attempting to drive legitimate companies like the DSN Defendants out of business through scorched-earth legal tactics. *(Ex. B, Wheat Depo. at 143:3-13 and 144:18-21 (Wheat admission that he is "in the process" of seeking to "spread [the DSN Defendants] thin" in an effort to cause them to "incur a high amount of legal fees" toward the goal of "put[ting] [them] out of business"))*. Wheat's career in the drug industry began in 1990, when he was convicted in Alabama federal

---

dianabol with a lowercase "d" refers to the generic steroid-related use of that term; and DIANABOL in all capital letters refers to the mark at issue.

court for possession of MDMA ("ecstasy") with intent to distribute. *(Ex. A.3, Pertinent Pleadings from United States v. Wheat et al., Criminal Case No. 90PT120S (N.D. Ala. 1990) at 1-7).* Five years later, Wheat was sentenced to 24 months in prison after being caught driving a vehicle containing 20 pounds of marijuana and more than $38,000 in cash. *(Id. at 8-11).* In 2006, Wheat, Hi-Tech, and other Hi-Tech associates were charged with a host of federal counts arising from a massive five-year scheme involving their illegal importation and sale of anabolic steroids, prescription drugs, and other controlled substances. *(Ex. A.4, Pertinent Pleadings from United States v. Wheat et al., Criminal Case No. 1:06-CR-382-JTC (N.D. Ga. 2006) at 1-51 (Sep. 7, 2006 Indictment [DE 1]) and 52-93 (Mar. 26, 2008 Superseding Indictment [DE 567])).* Wheat pleaded guilty and was sentenced to more than four years in prison. *(Id. at 94-106 (Aug. 15, 2008 Guilty Plea) and 107-111 (Feb. 2, 2009 Sentencing Order)).*

## 2. <u>Deceptive Trade Practices & False Advertising</u>

Also in 2008, this Court issued summary judgment – including a permanent injunction – in favor of the FTC and against Wheat, Hi-Tech, et al. in a lawsuit involving deceptive trade practices and false advertising. *FTC v. National Urological Group Inc.*, 645 F. Supp. 2d. 1167 (N.D. Ga. 2008), aff'd 356 Fed. App'x 358 (11th Cir. 2009). In November 2011, the FTC filed a contempt-related show-cause motion arising from Wheat and Hi-Tech's violation of the

injunction. *(Ex. A.5, Order [DE 966], FTC v. National Urological Group Inc., Civil Action No. 1:04-cv-3294-CAP (N.D. Ga. Oct. 10, 2017) at 4-7)*. Ultimately, on October 10, 2017, this Court entered judgment in favor of the FTC and assessed $40+ million in sanctions against Wheat and Hi-Tech. *(Id. at 132)*.

### 3. <u>Sale of Illegal Anabolic Steroids (Spiked Supplements)</u>

Meanwhile, on October 4, 2017, Wheat was yet again arrested by the federal authorities. *(Ex. A.6, Pertinent Pleadings from United States v. Wheat, Criminal Case No. 1:17-cr-2009-AT-CMS (N.D. Ga.) at 19 (Oct. 13, 2017 Executed Arrest Warrant [DE 30]))*. The illegal acts of which Wheat and Hi-Tech stand accused include **<u>the manufacture and sale of numerous muscle-building "prohormone dietary supplements" (including Superdrol, Equibolin, 1-AD, 1-Testosterone, and Androdiol) that, in fact, contained Schedule III Controlled Anabolic Steroids such as androstanedione, 4-androstenediol and/or 5-androstenediol, and boldione.</u>** *(Id. at 1-18 (Sep. 28, 2017 First Superseding Indictment [DE 7]))*.

### C. <u>Illegal Anabolic Steroids and Other Misbranded Ingredients</u>

The government's allegations in the present criminal action are consistent with the testing performed by the DSN Defendants <u>and</u> by Hi-Tech itself on Dianabol. The Banned Substances Control Group ("BSCG") is a third-party certification and testing provider specializing in dietary supplements and is

recognized as a leading entity in its field. *(Ex. C, Catlin Dep. 7:19-14:14).*  In
August 2016, BSCG oversaw testing of a sample of Dianabol purchased in 2015
through normal retail channels by Defendants' investigator.  BSCG's analysis
showed that Dianabol's ingredients include two controlled anabolic steroids
(androstenedione and dihydrotestosterone ("DHT")), as well as
dehydroepiandrosterone ("DHEA"). *(Id. at 29:4-14; Ex. A.7, BSCG Testing
Report).* In December 2016, Hi-Tech's own testing confirmed the presence in
Dianabol of Androstenedione and DHEA and could not exclude the presence of
DHT.  *(Ex. D, Bannister Depo. at 89:23-90:3 and 101:10-103:5).*

## II.  DEFENDANTS DSN, CLAPP, AND PBB

For more than a decade, Dynamic Sports Nutrition, LLC ("DSN") has
manufactured and sold dietary supplements as safe and legal alternatives to
androgenic anabolic steroids. DSN's products include D-ANABOL 25, DECA
200, and TREN 75. *(Ex. E, Clapp Decl. ¶¶6-7).* DSN sold more than 22,000
units of D-ANABOL 25 during 2013-2016. *(Id. ¶¶ 9-10).* DSN has never
received a report of a consumer confusion between D-ANABOL 25 and
DIANABOL or in relation to any other of its products.  *(Id. ¶ 27).* DSN makes
no false representations regarding the ingredients or the potentially beneficial
mass and muscle building effects of its products. *(Clapp Decl. at ¶¶ 14-15).*

## III.  DIANABOL

### A.  <u>History of the Term: A Generic Name</u>

In 1958, Ciba Pharmaceutical Company ("Ciba") registered the

DIANABOL Mark for use as the trade name of an anabolic steroid

(methandrostenolone). *(See Order [DE 82] at 14-15 (detailed discussion of*

*"dianabol" and citations); Ex. A.8, Additional Dianabol Articles; Ex. A.9,*

*USPTO File on Ciba Registration at 5).* The term has come to be known

generically to refer to goods that either contain or function the same as the

anabolic steroid methandrostenolone. *(Id.).* <u>Indeed, as early as 1969, United</u>

<u>States federal courts recognized that "dianabol" (with a lower-case "d") referred</u>

<u>to "a drug to help patients gain weight and improve their appetite."</u>  *Patton v.*

*Finch*, 305 F. Supp. 810, 812 (W.D.N.C. 1969); see also SEC No-Action letter re:

the Upjohn Company, 1985 WL 54062 (Mar. 26, 1985) (referring to "dianabol"

as a generic drug name) (copy attached at Ex. A.10). The word dianabol is now

ubiquitous as a reference to anabolic steroids and other performance enhancing

substances generally. *(Order [DE 82] at 14-15; Ex. 8, Dianabol-Related Articles).*

### B.  <u>History of the Mark DIANABOL</u>

#### 1.  <u>Original Registration by Ciba (1958)</u>

In 1958, Ciba registered the DIANABOL Mark for use in relation to a

non-specific "pharmaceutical hormone preparation."  *(Ex. A.9, USPTO File for*

*Ciba Registration at 5).*  On December 29, 2000, the mark was cancelled for

failure to file a Section 8 "Declaration of Use."  *(Id. at 1-2, Mark Cancellation).*

### 2.  Wheat's Failed First Attempt at Registration (2002)

Wheat first attempted to register the DIANABOL Mark in 2002 for

"Goods and Services: the sale and identification of specific vitamin and

nutritional supplements."  *(Ex. A.11, USPTO File for Attempted 2002*

*Registration at 23).* The USPTO rejected that application for a variety of

defects, including a failure to provide evidence of use in commerce. *(Id. at 15).*

### 3.  Wheat's Failed Second Attempt at Registration (2005)

Wheat attempted again in 2005 to register the DIANABOL Mark for

"Vitamins and dietary supplements."  In its initial Office Action, the USPTO

denied the registration because "the proposed mark DIANABOL [was] the

common generic name for a certain type of anabolic steroid, which is also known

as Methandrostenolone."  *(Ex. A.12, USPTO File for Attempted 2005*

*Registration at 23).* In a later Office Action, the USPTO again denied the

registration, reasoning : (1) if the subject product contained dianabol, the

proposed mark was generic (and illegal), and (2) if the subject product did <u>not</u>

contain dianabol, the proposed mark was "deceptively misdescriptive" because

it "describe[d] an ingredient, quality, characteristic, function or feature of the

relevant goods and/or services, and the description conveyed by the mark [was]

both false and plausible" (*i.e.*, consumers would be likely to believe that the product did, in fact, contain dianabol). *(Id. at 8-10).*

### 4.   Wheat's Third Attempt at Registration (2007)

Wheat tried again with a third registration attempt for DIANABOL in 2007, this time describing the covered Goods & Services as "dietary supplements, excluding anabolic steroids." *(Ex. A.13, USPTO File for 2008 Registration at 66).* Notwithstanding the USPTO's prior determination that the manufacture and sale of a non-steroid supplement under the DIANABOL Mark would be inherently "deceptively misdescriptive," Wheat's attempt at registration was ultimately approved in 2008. *(Id. at 2).*

### 5.   Assignee Hi-Tech's Declaration of Use (2017)

In assignee Hi-Tech's 2017 Declaration of Use of that Mark, the "Goods or Services" offered by Hi-Tech under the Mark were again described as "dietary supplements, excluding anabolic steroids." *(Id. at 8-11 (emphasis added)).*

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine issue about any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a). "[T]he mere existence of some alleged factual dispute . . . will not defeat an otherwise properly supported motion[.] [T]he requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247- 48 (1986) (emphasis added). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50. The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Rule 56 allows evidence to be submitted in inadmissible form at the summary judgment stage if it can be "reduced to admissible form" at trial. *Macuba v. Deboer*, 193 F.3d 1316, 1323-24 (11th Cir. 1999). Once the moving party has adequately supported its motion, the non-movant must come forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ARGUMENT

### I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TRADEMARK, UNFAIR COMPETITION, AND DECEPTIVE TRADE PRACTICES CLAIMS.

### A. The DIANABOL Mark Is Unenforceable Because of Hi-Tech's Materially Unlawful Mark-Related Activities.

#### 1. Unlawful Use of a Mark – Including Illegality of Products Sold Under the Mark – Bars Enforcement.

A party's right to claim trademark protection for its mark is contingent upon the party's lawful use of the mark. *FN Herstal, SA v. Clyde Armory, Inc.*, 838 F.3d 1071, 1086-87 (11th Cir. 2016). Accordingly, as a prerequisite to any attempt to enforce the mark, the shipment and sale of any products under that mark "must comply with all applicable laws and regulations." *Id.* (quoting *In re Pepcom Indus., Inc.*, 192 U.S.P.Q. 400, 401 (T.T.A.B. 1976)). "A use is unlawful if 'the issue of compliance has previously been determined (with a finding of non-compliance) by a court or government agency having competent jurisdiction under the statute involved, or where there has been a per se violation of a statute regulating the sale of a party's goods.'" *Id. (*citing *Kellogg Co. v. New Generation Foods, Inc.*, 6 U.S.P.Q.2d 2045, 2047 (T.T.A.B. 1988), 1988 WL 252503, at *3). Application of this doctrine also requires: (1) a sufficient nexus between the use of the mark and the violation; and (2) that the violation be "material" (i.e., "of such gravity and significance that the usage must be considered unlawful"). *Id.* (quoting *Gen. Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q.2d 1270, 1274 (T.T.A.B. 1992), 1992 WL 296518, at *4). Courts considering the issue of materiality place great significance upon violations that

implicate consumer protection, such as those at issue in cases involving FDA regulations intended to protect the public. *FN Herstal, SA v. Clyde Armory, Inc.*, Civil Action No. 3:12-CV-102-CAR, 2015 WL 196208 at *10 (M.D. Ga. Jan 8. 2015) (copy attached at Ex. F). The unlawful use doctrine has long been recognized by the Trademark Trial and Appeal Board and is now applied by an increasing number of federal courts. *Id.* at 9. The Ninth Circuit, Tenth Circuit, and Federal Circuit have expressly adopted the doctrine, as have district courts in New York. *See, e.g.*, *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000); *Gray v. Daffy Dan's Bargaintow*n, 823 F.2d 522, 526 (Fed. Cir. 1987); *Dessert Beauty, Inc. v. Fox*, 617 F. Supp. 2d 185 (S.D.N.Y. 2007). Although the Eleventh Circuit has stopped short of express adoption, it has applied and discussed the doctrine hypothetically to show that application of the doctrine in the subject case would not have changed the outcome. *See FN Herstal, SA v. Clyde Armory, Inc., 838 F.3d 1071, 1086-87 (11th Cir. 2016)*. District courts in Georgia and Florida have, however, adopted and applied the unlawful use doctrine. *See, e.g., Kratom Lab, Inc. v. Mancini*, No. 11–80987–CIV, 2013 WL 3927838, at *3–5 (S.D. Fla. July 29, 2013).

**2. Hi-Tech's Shipment and Sale of Dianabol Materially Violates Federal Law.**

Pursuant to 21 U.S.C. § 802(41)(A), "the term 'anabolic steroid' means any drug or hormonal substance, chemically and pharmacologically related to testosterone (other than estrogens, progestins, corticosteroids, and dehydroepiandrosterone." Expressly included in the definition of "anabolic steroid" are androstenedione (§ 802(41)(A)(iv)) and dihydrotestosterone ("DHT") ((§ 802(41)(A)(x), (xi), and (xxxiii)). *(See also Ex. D, Bannister Dep. at 104:18-23 (agreeing that androstenedione and DHT are anabolic steroids)).* The manufacture, distribution, or dispensation of these substances and the possession of these substances with intent to manufacture, distribute, or dispense are expressly prohibited by federal criminal statute. 21 U.S.C. § 841(a)(1) (defining prohibited acts) and 21 U.S.C. § 812(c)(Schedule III) (listing the "Schedule III" controlled substances, which expressly include all "anabolic steroids" at subsection Schedule III(e)). The pertinent statutes do not list any acceptable or threshold level in which anabolic steroids may be legally included in a product. Rather, anabolic steroids are prohibited at *any* level. Because of the grave threat to public health presented by violations of this statute, anabolic steroid-related violations are punishable in relation to a first offense of up to 10 years in prison (15 years if serious bodily injury or death results) and a

fine of $500,000 or more. 21 U.S.C. § 841(b)(1)(E)(i). The maximum sentence and fine increase substantially for repeat offenders. 21 U.S.C. § 841(b)(1)(E)(ii).

As detailed above, the testing performed by BSCG at the request of the DSN Defendants showed the presence in Dianabol of both DHT and androstenedione (anabolic steroids on the Schedule III list of Controlled Substances), as well as DHEA. Hi-Tech's own testing confirmed the presence of Androstenedione and DHEA and could not rule out the presence of DHT. *(Ex. D, Bannister Depo. at 89:23-90:3 and 101:10-103:5).* This spiking of the supposedly legal Dianabol supplement with prohibited anabolic steroids, as a matter of law, renders Dianabol an illegal drug.

Pursuant to 21 U.S.C. § 331, it is a violation of federal law to adulterate or misbrand any food, drug, device, tobacco product, or cosmetic in interstate commerce (subsection (b)) or to introduce or deliver for introduction into interstate commerce any such adulterated or misbranded products (subsection (a)). The penalties for violation of this criminal statute are codified at 21 U.S.C. § 333 and vary according to the perpetrator's intent and prior history of conviction. Hi-Tech's inclusion of Androstenedione and DHT in its Dianabol product render that product a "drug" for labeling and branding purposes. See 21 U.S.C. § 321(g)(1) (defining "drug") and (ff)(1-3) (defining "dietary supplement"). Moreover, the label/ingredient list for Dianabol does not disclose that that

product contains Androstenedione or DHT. Even without reference to the illegal anabolic steroids contained in Dianabol, its failure to list DHEA as an ingredient on the product packaging/labelling violates federal law. 21 U.S.C. § 343(q)(5)(F) requires accurate disclosure of the supplement ingredients, and 21 C.F.R. 101.36(b)(3) likewise requires that supplement ingredients like DHEA be disclosed on the product label or ingredient list. *(See Ex. A14, Dianabol Label/Ingredient List (which does not disclose the presence of DHEA))*.

**B.** **The DIANABOL Mark Is Unenforceable Pursuant to the "Unclean Hands" Doctrine.**

"Unclean hands is a defense to a Lanham Act infringement suit." *Hi–Tech Pharm., Inc. v. Demelo*, Civil Action No. 1:07–CV–1934–RWS, 2009 WL 901156 at *7 (N.D. Ga. Mar. 31, 2009) (citing *Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 870 (9th Cir. 2002)). The defense recognizes that a plaintiff should not in his mark or advertisements "be himself guilty of misleading representation." *Id.* If it is shown that the plaintiff "used the trademark to deceive consumers," the plaintiff is estopped from attempting to enforce its supposed rights in the mark. *Id.*; *see also Worden & Co. v. California Fig Syrup Co.*, 187 U.S. 516, 23 S. Ct. 161, 47 L. Ed. 282 (1903) (explaining that a trademark constructed or devised so that it communicates a false assertion is unenforceable). The application of the unclean hands doctrine

"lies within the sound discretion of the district court." *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1355 (11th Cir. 1983).

In the present matter, the very name of the Hi-Tech products at issue – coopted generic names for anabolic steroids – inherently mislead consumers regarding the nature of the product. In relation to the primary Hi-Tech product at issue herein (Dianabol), Hi-Tech fueled that consumer confusion by flatly stating in its marketing materials that, by virtue of its Dianabol product, the "King of Steroids" (dianabol) was "back." *(Ex. A.2, King of Steroids Ad).* And, incredibly, after years of FTC actions and criminal charges (and convictions) arising from Hi-Tech's and Wheat's sale of illegal drugs and false product-related claims, it has now been revealed that Hi-Tech's supplements (including Dianabol) actually contain illegal anabolic steroids. *(Ex. C, Catlin Dep. at 29:4-14; Ex. A.7, BCSG Report; Ex. D, Bannister Dep. at 89:23-90:3 and 101:10-103:5).* One cannot imagine a more clear-cut case of "unclean hands."

## C. The DIANABOL Mark Is Unenforceable Because the Mark is Generic.

### 1. Generic Names Cannot be Enforced as Trademarks.

A generic term is one that does not distinguish the goods of one producer from the goods of others. Instead, it is one that either by definition or through common use has come to be understood as referring to the genus of which the particular product is a species. Generic terms are unprotectable through trademark registration because such protection would frustrate legitimate competition,

making it difficult for competitors to market their own brands of the same product. . . . For a term to be generic, its primary significance to the relevant public must be to identify the nature of a good, rather than its source. This can occur in one of two ways. First, an invented name may become "genericized," that is, the term began life as a "coined term" but became generic through common usage. Second, **a term may be generic if it was commonly used prior to its association with the specific products at issue**.

*Hasbro, Inc. v. MGA Entm't, In*c., 497 F. Supp. 2d 337, 341–42 (D.R.I. 2007) (internal punctuation and citation omitted) (emphasis added). "No manufacturer can take out of the language a word, even a slang term, that has generic meaning as to a category of products and appropriate it for its own trademark use." *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 810 (2d Cir. 1999); *see also Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1182 n. 5 (11th Cir. 1985) ("Generic marks refer to a particular genus or class of which an individual service is but a member; such marks may never receive servicemark protection.").

### 2.   Dianabol Is a Generic Name for Methandrostenolone and Related Muscle/Strength-Building Products.

The facts underlying the genericization of dianabol over the past 60 years are detailed above at Facts, Section III. For sake of brevity, that section is incorporated herein as if restated in full. In short, by extraordinarily widespread and continuous use over the past 60 years, dianabol (with or without a capital "D") has come to refer as a generic name to

16

methandrostenolone and other anabolic steroids with similar effects. *(See Order [DE 82] at 15)*. The product Hi-Tech sells under its DIANABOL Mark (Dianabol) is intended for the identical use – strength and muscle gains – as dianabol and other similar anabolic steroids. *(Ex. A.1, Hi-Tech Products; Ex. A.2, King of Steroids Ad)*. <u>Thus, Hi-Tech uses the Dianabol Mark in **exactly** the same category of goods as methdandrostenolone and other anabolic steroids now understood to fall within the scope of that term.</u> The Mark is nothing more than a widely-used generic name, and, as such, is unenforceable.

**D.   <u>The DIANABOL Mark Is Unenforceable Because Hi-Tech's Use Falls Within the Express Exception Noted in the Registration.</u>**

As discussed at Facts, Section I.C above, Dianabol contains anabolic steroids. Products containing anabolic steroids are <u>expressly</u> excepted from the scope of the DIANABOL Mark issued by the USPTO. Accordingly, Hi-Tech's unauthorized use of the Mark is not protected and gives rise to no enforceable rights on behalf of Hi-Tech.

**E.   <u>Hi-Tech's Trademark Claim Is Barred by the Doctrine of Laches.</u>**

Pursuant to the equitable doctrine of laches, a mark holder may be estopped from complaining of infringement of its mark upon a showing of three elements: "(1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that the delay caused the defendant undue prejudice."

*Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1516 n.12 (11th Cir. 1984). The applicable standard "is a flexible one: the court must examine both the amount of the delay and the prejudice caused by that delay." *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1546 (11th Cir. 1984). The doctrine of laches may be invoked when the plaintiff's delay in filing suit exceeds the statute of limitations for the most closely analogous state law claim. *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1205 (11th Cir. 1997). In relation to a trademark infringement claim in a Georgia federal court, the corresponding limitation period for claims under the Georgia Deceptive Trade Practices Acts – 4 years "from the time at which the plaintiff knows or <u>should know</u> [it] has a provable claim for infringement."  *Id.* at 1206 (emphasis added).

Here, the DSN Defendants had been selling the allegedly infringing product (D-Anabol 25) openly and notoriously for nearly ten years before Hi-Tech finally filed suit. *(Ex. E, Clapp Decl. ¶ 3).* Throughout that time, DSN's steroid.com website has been among the top sites returned by a search on Google.com for "steroids."  (Id. ¶ 16). As of 2016, DSN had sold more than 22,000 units of D-Anabol 25 in the preceding three years. *(Id. ¶ 9).* Clapp and Wheat had been corresponding about the DIANABOL Mark since at least as early as 2012. *(Id. ¶ 9).* DSN attempted to register its D-ANABOL 25 Mark with the USPTO in 2011, which was additional notice to the world of DSN's use

of that mark. *(Ex A.17, USPTO File for Attempted 2011 Registration)*. In
*Groucho's Franchise Systems, LLC v. Grouchy's Deli, Inc.*, 683 Fed. Appx. 826,
829 (11th Cir. 2017), in affirming the trial court's grant of summary judgment
in favor of the defendant due to the mark holder's "tortoise-like" conduct, the
court could have been speaking of the present matter when it explained that the
mark holder had "waited a decade to challenge [the defendant's] use of an
allegedly infringing [mark]" and that "[l]aches is a good defense if plaintiff's
long failure to exercise its legal rights has caused defendant to rely to its
detriment by building up a valuable business around its trademark." *Id.*

### F.   The DIANABOL Mark Should be Cancelled Pursuant to 15 U.S.C. § 1119 Due to Hi-Tech's Illegal Use and Fraud.

Without reference to any of the above-discussed doctrines or defenses,
federal district courts have an express statutory mandate to cancel marks in
relation to which the mark was fraudulently registered. Pursuant to 15 U.S.C. §
1119, "[i]n any action involving a registered mark[,] the court may . . . order the
cancelation of registrations, in whole or in part . . . and otherwise rectify the
register with respect to the registrations of any party to the action." 15 U.S.C. §
1119. A party seeking cancellation of an opposing party's mark must show by
"clear and convincing proof": "(1) [t]hat it has standing to petition for
cancellation because it is likely to be damaged, and (2) that there are valid

grounds for discontinuing registration." *Dream Team Collectibles, Inc. v. NBA Properties*, 958 F. Supp. 1401, 1421 (E.D. Mo. 1997).  The requisite "valid grounds" for cancellation under 15 U.S.C. § 1119 include: (1) illegal use of the mark; and (2) fraud in procurement of the mark. *See Donovan v. Bishop,* No. 1:09–cv–275–WTL–TAB, 2010 WL 4062370, *3–4 (S.D. Ind. Oct.14, 2010); *Menper Distributors, Inc. v. Germa Products*, 2011 WL 2983716 (S.D. Fla. July 22, 2011) (without reaching the issue of the factual sufficiency of the plaintiff's claims of illegality in that particular case, refusing to dismiss the claim for cancellation arising from the mark holders violation of FDA labeling requirements).

In the present matter, Hi-Tech fraudulently obtained the mark at issue by willfully misstating the nature of the product to be marketed thereunder (i.e., by representing that the product would <u>not</u> contain anabolic steroids) and then, in violation of federal law, included both anabolic steroids and non-labeled ingredients in that product.  Finally, even if the Court somehow deemed the DIANABOL Mark to be descriptive, rather than generic, the mark would still be inherently and fatally fraudulent due to fact that the product "described" as Dianabol did not, as reasonable consumers might believe, contain dianabol.

### G.  Hi-Tech's Trademark Claims Fail Because There is No Likelihood of Confusion.

"In order to prevail on a trademark infringement claim based on a federally registered mark, 'the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent, and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive.'" *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983)); *see also Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001). When evaluating whether a likelihood of confusion exists in a trademark infringement action, the Eleventh Circuit has outlined seven factors for consideration:  (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1220 (11th Cir. 2008). Of these factors, the strength of the mark and evidence of actual confusion are the most important.

<u>Frehling Enters., Inc. v. Int'l Select Grp., Inc.</u>, 192 F.3d 1330, 1335 (11th Cir. 1999).

In the present matter, as the Court pointed out in its June 2, 2016 Order [DE 82] denying Hi-Tech's second application for a TRO, two of the most important factors – the weakness of the generic DIANABOL Mark and the dearth of evidence of actual confusion despite a decade-plus of D-Anabol 25 sales weigh heavily in favor of a finding that there is no likelihood of confusion.

## II. <u>HI-TECH'S OTHER CLAIMS FAIL ALONG WITH ITS FEDERAL TRADEMARK CLAIM.</u>

Plaintiff's unfair competition claims in Counts III and IV are based on Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Analysis of unfair competition under this statute is essentially the same as the trademark infringement analysis. *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1541 (11th Cir. 1985); *Golden Bear Int'l, Inc. v. Bear U.S.A., Inc.*, 969 F. Supp. 742, 748 (N.D. Ga. 1996) ("The test of federal trademark infringement is whether there is a 'likelihood of confusion' as a result of Defendant's activities. Similarly, an unfair competition claim under § 43(a) of the Lanham Act also depends on establishing a likelihood of confusion."). Moreover, "Georgia law and federal law share the same standard for trademark infringement." *Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*, Civil Action No. 1:00-CV-1934-

BBM, 2003 WL 22331254 at * 30 n.5 (N.D. Ga. May 9, 2003); see also *Corbitt Mfg. Co., Inc. v. GSO Am., Inc.*, 197 F. Supp. 2d 1368, 1374 (S.D. Ga. 2002). Similarly, the former Fifth Circuit has held that the test for a claim of deceptive trade practices and unfair competition under Georgia law is the same as the test for false designation of origin under the Lanham Act.  See A*mstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258-59 (5th Cir. 1980); *see also Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1248 n.11 (11th Cir. 2007) (noting that "the analysis of a Georgia unfair competition claim is 'co-extensive' with the analysis of a Lanham Act claim") (citation omitted); *Kason Indus., Inc. v. Component Hardware Grp.*, 120 F.3d 1199, 1203 (11th Cir. 1997) ("It should be apparent that § 43(a) of the Lanham Act and § 10–1–3 72(a)(2) of the [Uniform Deceptive Trade Practices Act] provide analogous causes of action governed by the same standard.") (footnote omitted). Accordingly, for the reasons stated in Section I, Plaintiff's state law claims for federal unfair competition, Georgia trademark infringement, Georgia unfair competition, and Georgia deceptive trade practices also fail.

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON HI-TECH'S FALSE ADVERTISING CLAIMS.

### A. Hi-Tech's False Advertising Claims Are Barred by the Unclean Hands Doctrine and DSN's Other Trademark Defenses.

In addition to infringement claims, the doctrine of "unclean hands"

applies with equal vigor to false advertising claims. *Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817 (W.D. Tex. 2001); *TrafficSchool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063 (C.D. Cal. 2008), reversed in part on other grounds, 653 F.3d 820 (2011). When a case involves a common nucleus of facts giving rise to claims for unfair competition and false advertising under the Lanham Act and claims for deceptive trade practices and unfair competition under Georgia law, all such claims "survive or fail together." *DS Waters of America, Inc. v. Fontis Water, Inc., 2012 WL 12873771 (September 13, 2012).*

### B.  **Hi-Tech Cannot Prove False Advertising.**

To succeed on a claim for false advertising, the claimant must show that: (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affected interstate commerce; and (5) the movant has been— or is likely to be—injured as a result of the false advertising. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Hi-Tech has not offered and cannot offer proof of the required elements.

## IV.  **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON HI-TECH'S RICO CLAIMS.**

Plaintiff's mail and wire fraud allegations are simply restatements of its

trademark claims and do not establish a federal RICO case. Courts have routinely held that the federal RICO statute is not a proper mechanism to address trademark infringement claims. (See Order [DE 82] at 28-31) (detailed discussion and citation of RICO-related authority).

## CONCLUSION

For the foregoing reason, the DSN Defendants respectfully request that this Court grant their motion for summary judgment, dismiss all claims and counts asserted by Hi-Tech, and award such other and further relief as this Court deems just and proper.

Respectfully submitted this 14th day of November, 2017.

**WELLBORN & WALLACE, LLC**

1175 Peachtree St., NE, Suite 300
Atlanta, Georgia 30361

Phone:  (404) 815-9595
Fax:      (404) 815-9957
E-mail: pete@wellbornlaw.com
            kelly@wellbornlaw.com

 s/ Paul F. Wellborn III
Paul F. Wellborn III
Georgia Bar No. 746720
Kelly O. Wallace
Georgia Bar No. 734166

Attorneys for Defendants

INDEX TO EXHIBITS

A    Wellborn Declaration
    1. Hi-Tech Product Information
    2. King of Steroids Article
    3. US v. Wheat (1990) (Pertinent Pleadings)
    4. US v. Wheat (2006) (Pertinent Pleadings)
    5. FTC v. Nat'l Urological (Oct. 10, 2017 Order)
    6. US v. Wheat (2017) (Pertinent Pleadings)
    7. BSCG Report (Defendants' Testing)
    8. Dianabol Articles
    9. USPTO File for Ciba Registration
    10. SEC No-Action letter re: the Upjohn Company
    11. USPTO File for Attempted 2002 Registration (Wheat)
    12. USPTO File for Attempted 2005 Registration (Wheat)
    13. USPTO File for Attempted 2008 Registration (Wheat)
    14. Dianabol Ingredient List
    15. USPTO File for Attempted 2008 Registration (DSN)
B.    Wheat Deposition
C.    Catlin Deposition
D.    Bannister Deposition
E.    Clapp Declaration
F.    FN Herstal, SA v. Clyde Armory, Inc.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HI-TECH PHARMACEUTICALS, INC.,<br>a Georgia corporation,<br><br>       Plaintiff,<br><br>v.<br><br>DYNAMIC SPORTS NUTRITION, LLC<br>d/b/a/ ANABOLIC RESEARCH,<br>a Texas Limited Liability Company;<br>PBB TRADEMARK HOLDINGS, LLC,<br>a Texas Limited Liability Company, and<br>BRIAN CLAPP, an individual,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION FILE NO.
1:16-CV-00949-MHC

## RULE 7.1 CERTIFICATE OF
## COMPLIANCE WITH LOCAL RULE 5.1

This certifies that the foregoing Motion for Summary Judgment was

prepared using 14-point Times New Roman font and accordingly complies with

Local Rule 5.1. This certificate is given in compliance with Local Rule 7.1(D).

**WELLBORN & WALLACE, LLC**

  s/ Paul F. Wellborn III

1175 Peachtree St., NE, Suite 300    Paul F. Wellborn III
Atlanta, Georgia 30361         Georgia Bar No. 746720
Phone:  (404) 815-9595        Kelly O. Wallace
Fax:     (404) 815-9957        Georgia Bar No. 734166
E-mail: pete@wellbornlaw.com
       kelly@wellbornlaw.com    Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HI-TECH PHARMACEUTICALS, INC., a Georgia corporation, Plaintiff, v. DYNAMIC SPORTS NUTRITION, LLC d/b/a/ ANABOLIC RESEARCH, a Texas Limited Liability Company; PBB TRADEMARK HOLDINGS, LLC, a Texas Limited Liability Company, and BRIAN CLAPP, an individual, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION FILE NO. 1:16-CV-00949-MHC |

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2017, I caused to be electronically filed the foregoing Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification or other sufficient notice of such filing to the following attorneys of record:

| Counsel For | Attorneys | E-mail Address/Other Means |
|---|---|---|
| Hi-Tech Pharmaceuticals, Inc. | Art Leach C.L. Parker | art@arthurwleach.com cl@clparkerllc.com |

**WELLBORN & WALLACE, LLC**

1175 Peachtree St., NE, Suite 300
Atlanta, Georgia 30361

Phone:  (404) 815-9595
Fax:      (404) 815-9957
E-mail:  pete@wellbornlaw.com
             kelly@wellbornlaw.com

 s/ Paul F. Wellborn III
Paul F. Wellborn III
Georgia Bar No. 746720
Kelly O. Wallace
Georgia Bar No. 734166

Attorneys for Defendants