# IN THE UNITED STATES DISTRICT COURT
## NOTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| HI-TECH PHARMACEUTICALS, INC., a ) Georgia corporation, ) ) Plaintiff, ) ) ) v. ) ) DYNAMIC SPORTS NUTRITION, LLC ) d/b/a ANABOLIC RESEARCH, ) a TEXAS Limited Liability Company; ) PBB TRADEMARK HOLDINGS, LLC, ) a Texas Limited Liability Company, and ) BRIAN CLAPP, an individual, ) ) Defendants. ) | Case No. 1:16-cv-00949-MHC |

## HI-TECH PHARMACEUTICALS, INC.'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Comes now, Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), Plaintiff in the above-styled action, and hereby submits this Response to Defendants' Statement of Undisputed Material Facts in Support of Their Opposition to Defendants' Motion for Summary Judgment, respectfully showing this Court as follows:

1.     High-Tech claims to be in the business of manufacturing and selling "high quality dietary supplement products" including "a number of products

designed for muscle and body building." *(First Amended Complaint [DE 62] ¶¶ 2 and 13)*.

*RESPONSE: Admitted.*

2.    At issue herein are Dianabol (to which Hi-Tech's trademark claims pertain) and, due to Hi-Tech's false advertising claims, its other "muscle and strength products in the dietary supplement sub-markets of testosterone boosters, muscle-gainers, muscle preservation products, and legal hormone boosters[,] [and its] weight loss aid products." *(Id. ¶ 53; Ex. A.1, Hi-Tech Products)*.

*RESPONSE: Denied. Hi-Tech objects as the alleged fact states an ultimate issue or legal conclusion that the Court should not consider. See LR 56.1(B)(1)(c) & (B)(2)(a)(2)(iii), NDGa. Hi-Tech further objects on the grounds that the alleged fact is not supported by the evidence cited.*

*Further, Hi-Tech denies that its products are properly at issue in this case, except to say that Defendants' trademark infringement and false advertising have diverted sales from some of Hi-Tech's products. Hi-Tech Hi-Tech's First Amended Complaint states:*

> *Defendants' D-ANABOL 25, DECA 200, TREN 75, WINN 50, TEST 600x, CLEN, VAR 10, and Pituitary Growth Hormone products directly compete with Hi-Tech's DIANABOL®, Bulasterone, Sustanon 250, Somatomax, and other of Hi-Tech's muscle and strength products in the dietary supplement sub-markets of testosterone boosters, muscle-*

*gainers, muscle preservation products, and legal hormone boosters as well as Hi-Tech's weight loss aid products.*

*Doc. 62 at ¶ 53.*

3.      Despite repeated claims by Hi-Tech that it never "compares or equates its products to anabolic steroids," "Dianabol" is, in fact, the generic name of one of the most popular anabolic steroids of all time. *(Ex. B., Wheat Depo. at 64:4-10 (denying steroid comparisons); Discussion of dianabol below).*

*RESPONSE:   Hi-Tech objects to the alleged fact as it relates to genericness, as genericness is an ultimate issue or legal conclusion that the Court should not consider. See LR 56.1(B)(1)(c) & (B)(2)(a)(2)(iii), NDGa. Hi-Tech further objects on the grounds that the alleged fact is not supported by the evidence cited.*

*Admitted that Hi-Tech does not compare or equate its products to anabolic steroids. Denied that Dianabol is the "generic name" of one of the most popular anabolic steroids of all time. As stated in Mr. Wheat's deposition:*

> *Q.      Well, Dianabol is an anabolic steroid; isn't it?*
>
> *A.      No. Dianabol was discontinued in 1983. Dianabol is a dietary supplement in which it is my trademark, which I excluded steroids, and it's it has been sold as an antibiotic (sic.) steroids. It's a trade name.*

*Doc. 160-19, Wheat Depo. at 137:3-9. Further, evidence submitted by Defendants depicts "Dianabol" being used as a trade name for methandrostenolone. 160-10 at pp. 37, 56 n. 47, 84, 102, 132, 202 n. 85, 208, 272, 292, 338, 390, 414, 433, 441,*

549. Finally, Defendants cite no evidence for its statement that methandrostenolone was "one of the most popular anabolic steroids of all time."

4.     Hi-Tech markets Dianabol by declaring that "the anabolic steroid Dianabol was called the King of Steroids . . . the King has now returned . . . [Dianabol] lives up to its name and reputation." *(Ex. A.2, King of Steroids Ad)*.

RESPONSE: Denied. Hi-Tech contends that the advertisements in Defendants' Exhibit A.2, Doc. 160-4 cannot be authenticated, such that they could constitute admissible evidence. Upon information and belief, the source of these documents is an individual who has falsified documents as to Hi-Tech in the past.  Even if Doc. 160-4 could be authenticated, which Hi-Tech contends it cannot, there is no evidence that the advertisements ran during the time period relevant to this case, or that they were distributed to consumers.

5.     Hi-Tech intentionally destroyed any arguable distinction between Dianabol and dianabol, declaring that the "name remains the same." *(Id. at (emphasis added))*.

RESPONSE: Denied. There is no evidence on record supporting the contention that Hi-Tech "destroyed any arguable distinction between Dianabol and dianabol" in the minds of consumers." The evidence cited does not support this conclusion. Hi-

*Tech further contends that advertisements referenced cannot be authenticated and are unreliable and, in any event, irrelevant and immaterial as set forth above.*

6.     Hi-Tech's marketing of Dianabol is, in fact, consistent with its admitted practice of co-opting generic names of anabolic steroids as the names for its strength-building supplements. *(Ex. B, Wheat Depo, at 137:15-18).*

*RESPONSE: Hi-Tech objects on the ground that Defendants' statement is overly vague and ambiguous as to what is meant by "consistent with." The evidence cited also does not support Defendants' statement, and constitutes a mischaracterization of Mr. Wheat's testimony.*

*Further, Hi-Tech denies that is uses "generic names" for its products. The record reflects that "Dianabol" was a trade name for methandrostenolone. Doc. 160-19 at 137:3-9; Doc. 160-10 at pp. 37, 56 n. 47, 84, 102, 132, 202 n. 85, 208, 272, 292, 338, 390, 414, 433, 441, 549.*

7.     Hi-Tech and its founder Jared Wheat spike their products with anabolic steroids and other controlled substances and attempting to drive legitimate companies like the DSN Defendants out of business through scorched-earth legal tactics. *(Ex. B, Wheat Depo. at 143:3-13 and 144:18-21 (Wheat admission that he is "in the process" of seeking to "spread [the DSN Defendants] thin" in an effort to cause them to "incur a high amount of legal fees" toward the goal of "put[ting]*

*[them] out of business")).*

*RESPONSE: Denied. This statement is not supported by the evidence cited, and constitutes a mischaracterization of Mr. Wheat's deposition testimony.*

*Further, Hi-Tech does not "spike" its products with anabolic steroids or other controlled substances. The androstenedione and DHT allegedly detected by Defendants in Hi-Tech's DIANABOL product were detected in trace amounts. Doc. 160-9; Exh. 1 at ¶¶ 65-72. Hi-Tech has no motive to put trace amounts of such substances in its products. The alleged trace amounts would have no discernable effect on the body, and would therefore give Hi-Tech no competitive advantage. Id. Further, the detection of androstenedione is explained by the synthesis of DHEA, a legal dietary supplement ingredient. Id. at ¶¶ 60-63.*

8.    Wheat's career in the drug industry began in 1990, when he was convicted in Alabama federal court for possession of MDMA ("ecstasy") with intent to distribute. *(Ex. A.3, Pertinent Pleadings from United States v. Wheat et al., Criminal Case No. 90PT120S (N.D. Ala. 1990) at 1-7).*

*RESPONSE: Denied. The evidence submitted by Defendants does not support their contention. Mr. Wheat does not have a "career in the drug industry." This characterization is misleading and improperly prejudicial. Hi-Tech manufactures, distributes, and sells dietary supplement products. Doc. 62 at ¶¶ 2,13. Denied that*

*Mr. Wheat was convicted in Alabama federal court for possession of MDMA ("ecstasy") with intent to distribute. The filings submitted by Defendants reflect a supervised release revocation, not a conviction. Doc. 160-5.*

*Mr. Wheat further denies that information and documents concerning this criminal matter are material or admissible in the current case. See Fed. R. Evid. 401, 403, 404, 609.*

9.    Five years later, Wheat was sentenced to 24 months in prison after being caught driving a vehicle containing 20 pounds of marijuana and more than $38,000 in cash. *(Id. at 8-11).*

RESPONSE: *Admitted, but denied that Mr. Wheat was convicted for this offense. This relates to a supervised release revocation. Hi-Tech contends this evidence is not relevant, material, or admissible. See Fed. R. Evid. 401, 403, 404, 609.*

10.    In 2006, Wheat, Hi-Tech, and other Hi-Tech associates were charged with a host of federal counts arising from a massive five-year scheme involving their illegal importation and sale of anabolic steroids, prescription drugs, and other controlled substances. *(Ex. A.4, Pertinent Pleadings from United States v. Wheat et al., Criminal Case No. 1:06-CR-382-JTC (N.D. Ga. Sep. 7, 2006) at 1-  51 (Indictment [DE 1]) and 52-93 (Mar. 26, 2008 Superseding Indictment [DE 567])).*

*RESPONSE: Hi-Tech denies Defendants' characterization of the evidence as misleading and overly prejudicial. Mr. Wheat plead guilty to one count of conspiracy to commit mail and wire fraud, not all the counts in the indictments as implied by Defendants. Doc. 160-6 at p. 95. The plea did not involve Hi-Tech, and occurred years before the time period relevant to this case. Id. at pp. 95-96. Hi-Tech further states that the documents and information reflected by Doc. 160-6 are not material or admissible in the current case. See Fed. R. Evid. 401, 403, 404, 609.*

11.    Wheat pleaded guilty and was sentenced to more than four years in prison. *(Id. at 94-106 (Aug. 15, 2008 Guilty Plea) and 107-111 (Feb. 2, 2009 Sentencing Order)).*

*RESPONSE: Hi-Tech states that Mr. Wheat plead guilty to one count of conspiracy to commit mail and wire fraud, not all the counts in the indictments as implied by Defendants. Doc. 160-6 at p. 95. The plea did not involve Hi-Tech, and occurred years before the time period relevant to this case. Id. at pp. 95-96. Hi-Tech further states that the documents comprising Doc. 160-6 are not material or admissible in the current case. See Fed. R. Evid. 401, 403, 404, 609.*

12.    Also in 2008, this Court issued summary judgment – including a permanent injunction – in favor of the FTC and against Wheat, Hi-Tech, et al. in a lawsuit involving deceptive trade practices and false advertising. *FTC v. National*

*Urological Group Inc.*, 645 F. Supp. 2d. 1167 (N.D. Ga. 2008), aff'd 356 Fed. App'x 358 (11th Cir. 2009).

*RESPONSE: Hi-Tech states that the Order speaks for itself.  Hi-Tech states that the Order is not admissible evidence, see Fed. R. Evid. 401, 403, 404, and that the case related to conduct not involving DIANABOL® and conduct taking place years before the relevant time period in this case.  FTC v. National Urological Group Inc., 645 F. Supp. 2d. 1167, 1177-78 (N.D. Ga. 2008). Hi-Tech states that the summary judgement is not relevant, material, or admissible in this case. See Fed. R. Evid. 401, 403, 404, 609.*

13.    In November 2011, the FTC filed a contempt-related show-cause motion arising from Wheat and Hi-Tech's violation of the injunction. *(Ex A.5, Order [DE 966], FTC v. National Urological Group Inc., Civil Action No. 1:04- cv-3294-CAP (N.D. Ga. Oct. 10, 2017) at 4-7).*

*RESPONSE: Hi-Tech denies the statement as misleading and not supported by the evidence on record. Hi-Tech denies it violated the injunction, and denies any characterization that the alleged contempt involved a finding or allegation or false advertising. Doc. 160-7. Further, neither the FTC's motion nor the Court's Order are proper evidence in this case, see Fed. R. Evid. 401, 403, 404, 802, 803, and are not relevant or material evidence in this case.*

14.     Ultimately, on October 10, 2017, this court entered judgment in favor of the FTC and assessed $40+ million in sanctions against Wheat and Hi-Tech. *(Id. at 132).*

RESPONSE: Admitted. Hi-Tech states that the judgment did not involve a finding of false advertising and did not involve DIANABOL, or Hi-Tech's muscle and strength products. This judgment is currently on appeal the Eleventh Circuit, and is not relevant, material, or admissible in this case. See Fed. R. Evid. 401, 403, 404.

15.     Meanwhile, on October 4, 2017, Wheat was yet again arrested by then federal authorities. *(Ex. A.6, Pertinent Pleadings from United States v. Wheat, Criminal Case No. 1:17-cr-2009-AT-CMS (N.D. Ga. October 13, 2017) at 19 (Executed Arrest Warrant [DE 30])).*

RESPONSE: Hi-Tech admits that Mr. Wheat was arrested by authorities on October 4, 2017. Hi-Tech denies Defendants' characterization of "yet again," as misleading and overly prejudicial. Hi-Tech states that this arrest and the evidence cited by Defendants is not relevant, material, or admissible in this case. See Fed. R. Evid. 401, 403, 404, 802, 803.

16.     The illegal acts of which Wheat, Schopp, and Hi-Tech stand accused include the manufacture and sale of numerous muscle-building "prohormone dietary supplements" (including Superdrol, Equibolin, 1-AD, 1-Testosterone, and

Androdiol, that, in fact, contained Schedule III Controlled Anabolic Steroids such as androstanedione, 4-androstenediol and/or 5-androstenediol, and boldione. *(Id. at 1-18 (Sep. 28, 2017 First Superseding Indictment [DE 7])).*

*RESPONSE: The indictment speaks for itself. Hi-Tech denies that the aforementioned products contain Schedule III Controlled Anabolic Steroids such as androstanedione, 4-androstenediol and/or 5-androstenediol, and boldione, and states that this statement is not supported by the evidence cited. Further, the indictment and related information is not relevant, material, or admissible. See Fed. R. Evid. 401, 403, 404, 802, 803.*

17.   The government's allegations in the present criminal action are consistent with the testing performed by the DSN Defendants and by Hi-Tech itself on Dianabol.

*RESPONSE: Denied. Defendants cite no evidentiary support for this contention. It is also vague and ambiguous as to what is meant by "consistent with." The government makes no allegation with respect to Hi-Tech's Dianabol® supplement or androstenedione. Doc. 160-8 at p. 1-18. Furthermore, the indictment does not constitute relevant, material, or admissible evidence in this case. See Fed. R. Evid. 401, 403, 404, 802, 803.*

18.   The Banned Substances Control Group ("BSCG") is a third-party

certification and testing provider specializing in dietary supplements and is recognized as a leading entity in its field. *(Ex. C, Catlin Dep. 7:19-14:14).*

*RESPONSE: Denied. Hi-Tech admits that BSCG is a third-party and purports to be "a certification and testing provide specializing in dietary supplements." Doc. 160-20 at 7:19-8:3. The evidence cited by Defendants does not support the contention that BSCG is recognized as a leading entity in its field. Hi-Tech further states that this statement is misleading because BSCG did not perform the lab testing at issue. Id. at 29:1-19.*

19.    In August 2016, BSCG oversaw testing of a sample of Dianabol purchased in 2015 through normal retail channels by Defendants' investigator.

*RESPONSE: Denied. Defendants cite no evidence in support of this contention. Hi-Tech denies BSCG oversaw testing of a sample of Dianabol.  Id. at 29:1-19.*

20.    BSCG's analysis showed that Dianabol's ingredients include two controlled anabolic steroids (androstenedione and dihydrotestosterone ("DHT")), as well as dehydroepiandrosterone ("DHEA"). *(Id. at 29:4-14; Ex. A.7, BCS Testing Report).*

*RESPONSE:  Denied. BSCG did not perform the testing or analysis at issue. Id. at 29:1-19. The accuracy and level of certainty in Defendants' lab testing is questionable, and that their detection of DHT, albeit in trace amounts, is*

*inconsistent with other evidence on record. Exh. 1 at ¶¶ 24-59, 64. Hi-Tech also denies the characterization that androstenedione and DHT are "ingredients" in Hi-Tech's product. There is no evidence Hi-Tech knowingly and intentionally added those substances to its product, and the androstenedione was present as a manufacturing byproduct of DHEA, which a third-party manufactured for Hi-Tech. Exh. at ¶¶ 60-63. Further, the androstenedione and DHT were detected in only trace amounts. Id. at ¶¶ 65-72.*

21.   In December 2016, Hi-Tech's own testing confirmed the presence in Dianabol of Androstenedione and DHEA and could not exclude the presence of DHT. *(Ex. D, Bannister Depo. at 89:23-90:3 and 101:10-103:5).*

*RESPONSE: Admitted that Hi-Tech's testing indicated the presence of androstenedione and DHEA in the product. Hi-Tech denies Defendants' characterization of the evidence as misleading, as Dr. Bannister testified that "[t]he ABC testing reports for the two lots of Dianabol show DHT as not detected." 160-21 at 90:4-7.*

22.   For more than a decade, Dynamic Sports Nutrition, LLC ("DSN") has manufactured and sold dietary supplements as safe and legal alternatives to androgenic anabolic steroids. DSN's products include D-ANABOL 25, DECA 200, and TREN 75. *(Ex. E, Clapp Decl. ¶¶6-7).*

13

RESPONSE: Defendants object as the alleged fact states an ultimate issue or legal conclusion that the Court should not consider. See LR 56.1(B)(1)(c) & (B)(2)(a)(2)(iii), NDGa.  Admitted that DSN's products include D-ANABOL 25, DECA 200, and TREN 75.

Defendant denies the remaining assertions in statement number 22. DSN does not manufacture the products it sells. Exh. 18 at 21:15-20. Hi-Tech further denies Defendants' characterization that it sells "safe and legal alternatives to androgenic anabolic steroids." Defendants sell the Subject products as though they are actually anabolic steroids or their equivalent.

Defendants' marketed their products on websites with domain names such as steroids.com, roidstore.com, oralsteroids.com, and buysteroids.com; on a webpage amounting to an encyclopedia regarding anabolic steroids; and on a website dedicated to the discussion of anabolic steroids. Exh. 13. Defendants' products cannot be considered "alternatives" to anabolic steroids because they cannot cause the physical effects advertised. Exh. 17. Defendants proprietary blend names, trade dress, and advertising claims reflect an intent to sell the products as though they are actual anabolic steroids or their equivalent. Id. Further, there are several instances

*of actual consumer confusion between Defendants' products and anabolic steroids.[1] The record also reflects an internal memo sent by Clapp saying that he wanted Defendants' online advertising to "trick the viewer into thinking that ... our bottles are real steroids." Exh. 19.*

23.    DSN sold more than 22,000 units of D-ANABOL 25 during 2013-2016. *(Id. ¶¶ 9-10).*

*RESPONSE: Hi-Tech admits that DSN produced documents supporting this contention, but states that this assertion of fact is misleading in light of the figures produced. See Exh. 21.*

24.    DSN has never received a report of a consumer confusion between D-ANABOL 25 and DIANABOL or in relation to any other of its products. *(Id. ¶ 27).*

*1.    RESPONSE:  Denied. Hi-Tech admits that Defendants did not produce evidence of consumer confusion. A consumer survey commissioned by Hi-Tech found that "50% of [nutritional supplement purchasers] say D-ANABOL and DIANABOL are made by, affiliated with, or sponsored or approved by the same company based on viewing the product trademarks. ... On an unaided basis, the*

---

[1] *Exh. 18 at 133:21-134:11; Exh. 16 at DEF006194, 6920, 6921, 6949, 6957, 6972, 6990, 6933, 7025, 7032, 7801, 7083, 7087, 7088. 7091, 7117, 7129, 7130, 7139, 7142, 7149, 7182, 7189.*

*stated reason given most often is the similarity of the names D-ANABOL and DIANABOL." Exh. 11 at p. 3 (finding, in contrast, that only 30% of nutritional supplement purchasers saw a similar connection between the Dianabol® supplement and a control product). This evidence indicates that Defendants have likely received reports of consumer confusion.*

25.    DSN makes no false representations regarding the ingredients or the potentially beneficial mass and muscle building effects of its products. *(Clapp Decl. at ¶¶ 14-15).*

*RESPONSE: Denied. Defendants object as the alleged fact states an ultimate issue or legal conclusion that the Court should not consider. See LR 56.1(B)(1)(c) & (B)(2)(a)(2)(iii), NDGa.*

*Dr. Marvin Heuer has explained why the consumption of Defendants' products could not cause the physical effects advertised, and why Defendants' advertising is otherwise false and misleading. Exh. 17. There is no expert or scientific substantiation supporting Defendants' advertising claims.[2]*

26.    In 1958, Ciba Pharmaceutical Company ("Ciba") registered the DIANABOL Mark for use as the trade name of an anabolic steroid

---

[2] *Exh. 18, Clapp Dep. at 42:1-43:4; 44:5-17; 52:1-53:8; 57:11-21; 60:14-61:13; 70:3-19; 73:14-74:1; 108:4-23; 115:3-23; 116:1-117:2; 117:7-119-6; 119:1-120:25; 125:2-16; 126:7-127:15.*

(methandrostenolone). *(See Order [DE 82] at 14-15 (detailed discussion of "dianabol" and citations); Ex. A.8, Additional Dianabol Articles; Ex A.9, USPTO File on Ciba Registration at 5).*

RESPONSE: Admitted.

27.   The term has come to be known generically to refer to goods that either contain the anabolic steroid methandrostenolone or function the same. *(Id.).*

RESPONSE: Denied. Defendants object as the alleged fact states an ultimate issue or legal conclusion that the Court should not consider. See LR 56.1(B)(1)(c) & (B)(2)(a)(2)(iii), NDGa. The evidence cited by Defendants also does not support their statement.

      As for the Court's prior Order, the Court simply found that "Defendants have [] presented evidence that, since its introduction in 1958, the term [dianabol] has come to be known generically to refer to goods that either contain the anabolic steroid or function the same." Doc. 82 at 15. The Court did not make a finding of genericness. Id. The Court also acknowledged that, based upon the limited record at that point, "there exists a disputed material issue of fact concerning whether DIANABOL is descriptive or generic." Id.

      As for Defendants' Dianabol Articles, Defendants attached to their motion 24 publications which refer to "Dianabol" or "dianabol." Doc. 160-10. Of these 24

documents, 15 state that they are referring to the substance "methandrostenolone" specifically and/or the particular drug named "Dianabol" (i.e., the trade name for methandrostenolone), which was developed by and associated with Dr. John Ziegler and Ciba Pharmaceuticals. Id. at pp. 22,[3] 37, 56 n. 47, 84, 102, 132, 202 n. 85, 208, 272, 292, 338, 390, 414, 433, 441, 549. Four of the documents refer to "Dianabol" the "drug" or "steroid" (singular) without identifying a chemical name. Id. at pp. 33, 36, 397, 581.[4] And three of the documents include lists of various anabolic steroids, "Dianabol," with a capital "D," being among them. Id. at pp. 15, 16, 522.

Thus, in sum: (i) none of the documents produced by Defendants refer to a dietary supplement as "Dianabol" or "dianabol"; (ii) none of the documents evidences an intent to refer to anything other than the particular substance methandrostenolone; and (iii) none of the documents use the word "Dianabol" or "dianabol" to refer to a category of substances, whether drugs, supplements, or both.

---

[3] This document, apparently a List of Controlled Substances by the Drug Enforcement Agency refers to "methandienone," which is a synonym for methandrostenolone. Exh. 9.

[4] While one the wording of one article is somewhat unclear as to whether the author intended to describe dianabol as a single steroid or multiple steroids, id. at 363, review of the news article relied upon by the author for the statement clearly refers to "Dianabol, a steroid." Exh. 10.

*Hi-Tech further states that Clapp has stated, with respect to Hi-Tech's DIANABOL® trademark, "the brand recognition is massive," Exh. 8 at DSN000012, and that the word "Dianabol" does not appear as a defined term on dictionary.com, merriam-webster.com, en.oxforddictionaries.com, or macmillandictionary.com.[5]*

28.    Indeed, as early as 1969, United States federal courts recognized that "dianabol" (with a lower-case "d") referred to "a drug to help patients gain weight and improve their appetite." *Patton v. Finch*, 305 F. Supp. 810, 812 (W.D.N.C. 1969); see also SEC No-Action letter re: the Upjohn Company, 1985 WL 54062 (Mar. 26, 1985) (referring to "dianabol" as a generic drug name) (copy attached at Ex. A.10).

*RESPONSE: Hi-Tech denies this assertion as misleading and not supported by the evidence cited. Defendants admit that the Patton Court, a single court, referred to "dianabol, a drug to help patients gain weight and improve their appetite," but, given the court was discussing medical treatment provided in 1960, and Ciba registered its mark in 1958, it is apparent that the court is referring to the drug methandrostenolone. Patton v. Finch, 305 F.Supp. 810, 812 (D.C.N.C. 1969). Further, Defendants Exhibit A.10 does not say that "dianabol" is a generic drug name. Doc. 160-12 at p. 11.*

---

[5] *Last checked December 14, 2017.*

29.    The word dianabol is now ubiquitous as a reference to anabolic steroids and other performance enhancing substances generally. *(Order [DE 82] at 14- 15; Ex. 8, Dianabol-Related Articles).*

*RESPONSE: Denied. Defendants object as the alleged fact states an ultimate issue or legal conclusion that the Court should not consider. See LR 56.1(B)(1)(c) & (B)(2)(a)(2)(iii), NDGa. The evidence cited by Defendants also does not support their statement. Hi-Tech denies this assertion on the basis set forth in its response to paragraph 27.*

30.    In 1958, Ciba registered the DIANABOL Mark for use in relation to a non-specific "pharmaceutical hormone preparation." *(Ex. A.9, USPTO File for Ciba Registration at 5).*

*RESPONSE: Denied. Hi-Tech admits that Ciba applied to register the DIANABOL mater in 1958, and that the mark was registered in 1959. Doc. 160-11 at 1. Hi-Tech admits that the mark was registered for a "pharmaceutical hormone preparation," but denies Defendants' attempt to imply that Ciba used the mark for anything other than methandrostenelone. The evidence on record demonstrates that Ciba used "Dianabol" only for the methandrostenelone – a single substance. See, e.g., Doc.*

*160-10 at 22,[6]  37, 56 n. 47, 84, 102, 132, 202 n. 85, 208, 272, 292, 338, 390, 414,*

*433, 441, 549.*

31.     On December 29, 2000, the DIANBOL mark was cancelled for the

holder's failure to file a Section 8 "Declaration of Use." *(Id. at 1-2, Mark*

*Cancellation).*

*RESPONSE: Admitted.*

32.     Wheat first attempted to register the DIANABOL Mark in 2002 for

"Goods and Services: the sale and identification of specific vitamin and nutritional

supplements." *(Ex. A.11, USPTO File for Attempted 2002 Registration at 23).*

*RESPONSE: Admitted, but Hi-Tech denies this evidence is relevant, material, or*

*admissible in this case. See Fed. R. Evid. 401, 403.*

33.     The USPTO rejected that application for a variety of defects, including

a failure to provide evidence of use in commerce. *(Id. at 15).*

*RESPONSE: Hi-Tech denies this statement as misleading and not supported by the*

*evidence cited. The USPTO denied the 2002 application for reasons unrelated to the*

*DIANABOL mark itself, but rather for reasons related to technical errors in the*

---

[6] *This document, apparently a List of Controlled Substances by the Drug Enforcement Agency refers to "methandienone," which is a synonym for methandrostenolone. Exh. 9.*

*completion and submission of the application. Doc. 160-13 at pp. 15-17. The USPTO*

*also stated that the trademark sample provided by Mr. Wheat, a print of the mark,*

*was insufficient as evidence of actual trademark use. Id. at p. 15.*

*Hi-Tech denies this evidence is relevant, material, or admissible in this case.*

*See Fed. R. Evid. 401, 403.*

34.    Wheat attempted again in 2005 to register the DIANABOL Mark for

"Vitamins and dietary supplements."

*RESPONSE: Admitted, but Hi-Tech denies this evidence is relevant, material, or*

*admissible in this case. See Fed. R. Evid. 401, 403.*

35.    In its initial Office Action, the USPTO denied the registration because

"the proposed mark DIANABOL [was] the common generic name for a certain type

of anabolic steroid, which is also known as Methandrostenolone."   *(Ex. A.12,*

*USPTO File for Attempted 2005 Registration at 23).*

*RESPONSE: Denied. Defendants' assertion mischaracterizes the evidence, and is*

*not supported by the evidence cited. The evidence cited by Defendants does not*

*constitute a final refusal, but rather a refusal requesting additional information from*

*the applicant. Doc. 160-14 at pp. 23-24. Further, the refusal did not deny*

*registration on the grounds stated by Defendants, but rather over questions*

*surrounding descriptiveness and genericness, which could be addressed by Mr. Wheat's production of additional information. Id.*

*Hi-Tech also denies this evidence is relevant, material, or admissible in this case. See Fed. R. Evid. 401, 403.*

36.    In a later Office Action, the USPTO again denied the registration, reasoning : (1) if the subject product contained dianabol, the proposed mark was generic (and illegal), and (2) if the subject product did not contain dianabol, the proposed mark was "deceptively misdescriptive" because it "describe[d] an ingredient, quality, characteristic, function or feature of the relevant goods and/or services, and the description conveyed by the mark [was] both false and plausible" (i.e., consumers would be likely to believe that the product did, in fact, contain dianabol). *(Id. at 8-10).*

*RESPONSE: Hi-Tech denies this statement as misleading, a mischaracterization of the evidence, and not supported by the evidence cited. The USPTO did not find any illegality, and the application refusal centered around Mr. Wheat's identification of goods as "vitamins and dietary supplements." Doc. 160-14 at pp. 8-9. This issue was subsequently addressed to the satisfaction of the USPTO. Doc. 160-15 at p. 54.*

*Hi-Tech also denies this evidence is relevant, material, or admissible in this case. See Fed. R. Evid. 401, 403.*

37.    Wheat tried again with a third registration attempt for DIANABOL in 2007, this time describing the covered Goods & Services as dietary supplements, excluding anabolic steroids." *(Ex. A.13, USPTO File for 2008 Registration at 66).*

*RESPONSE: Hi-Tech objects to this statement as misleading and improperly prejudicial. Admitted that Mr. Wheat filed a third trademark application for DIANABOL in 2007. Hi-Tech denies that the fact of three applications is relevant, material, or admissible in this case. See Fed. R. Evid. 401, 403.*

38.    Notwithstanding the USPTO's prior determination that the manufacture and sale of a non-steroid supplement under the DIANABOL Mark would be inherently "deceptively misdescriptive," Wheat's attempt at registration was ultimately approved in 2008. *(Id. at 2).*

*RESPONSE: Hi-Tech denies this assertion as misleading not supported by the evidence. The USPTO did not make the determination alleged, and the prior application refusal centered around Mr. Wheat's identification of goods as "vitamins and dietary supplements." Doc. 160-14 at pp. 8-9. Doc. 160. Hi-Tech admits that its DIANABOL® trademark was registered in 2008. Hi-Tech states that the USPTO's prior rejections are not relevant, material, or admissible in this case. See Fed. R. Evid. 401, 403.*

39.    In assignee Hi-Tech's 2017 Declaration of Use of that Mark, the

"Goods or Services" offered by Hi-Tech under the Mark were again described as "dietary supplements, excluding anabolic steroids." *(Id. at 8-11 (emphasis added)).*

*RESPONSE: Admitted.*

40.    Here, the DSN Defendants had been selling the allegedly infringing product (D-Anabol 25) openly and notoriously for nearly ten years before Hi- Tech finally filed suit. *(Ex. E, Clapp Decl. ¶ 3).*

2.    *RESPONSE: Denied. Hi-Tech objects to the use of the language "openly and notoriously" as vague, ambiguous, and misleading. Defendants did not market their products in the usual, legitimate dietary supplement marketplace. Defendants' marketed their products on websites with domain names such as steroids.com, roidstore.com, oralsteroids.com, and buysteroids.com; on a webpage amounting to an encyclopedia regarding anabolic steroids; and on a website dedicated to the discussion of anabolic steroids. Exh. 13. Hi-Tech further denies the implication that Hi-Tech knew of Defendants sale of D-ANABOL 25 prior to September 10, 2015. Hi-Tech learned of Defendants' infringement on September 10, 2015, Exh.15; Doc. 64-16 at ¶ 11.*

41.    Throughout that time, DSN's steroid.com website has been among the top sites returned by a search on Google.com for "steroids." (*Id.* ¶ 16). As of 2016, DSN had sold more than 22,000 units of D-Anabol 25 in the preceding three years.

*(Id. ¶ 9).*

RESPONSE: Denied. Hi-Tech objects to use of the language "among the top sites" as vague and ambiguous. Hi-Tech also questions whether Mr. Clapp actually has personal knowledge regarding the first statement in this paragraph. Hi-Tech further contends that this testimony is not admissible in this case as irrelevant and confusing. See Fed. R. Evid. 401, 403.

Hi-Tech admits that DSN produced documents supporting its assertion regarding the sale of D-ANABOL 25 unites, but states that this assertion of fact is misleading in light of the figures produced. See Exh. 21.

42.     Clapp and Wheat had been corresponding about the DIANABOL Mark since at least as early as 2012. *(Id. ¶ 9).*

RESPONSE: Admitted, but Hi-Tech states that this assertion is misleading to the extent it implies that Clapp and Wheat discussed the D-ANABOL 25 mark. Clapp did not disclose his involvement with the D-ANABOL 25 mark. Exh. 8.

43.     DSN attempted to register its D-ANABOL 25 Mark with the USPTO in 2011, which was additional notice to the world of DSN's use of that mark. *(Ex A.17, USPTO File for Attempted 2011 Registration).*

RESPONSE: Denied. The evidence cited does not support Defendants' contention. There is no evidence to support the contention that DSN's USPTO application

served as "notice to the world" of DSN's use of D-ANABOL 25. Further, DSN's D-ANABOL 25 application does not come up on a trademark search for "Dianabol" on the PTO website, such that Hi-Tech could have found it by reasonable search.[7] DSN filed its application in 2011, several years after Mr. Wheat applied for and registered the DIANABOL® trademark. Compare Exh. 14 with Doc. 160-15. And, DSN's trademark application, which the USPTO promptly rejected, was never published for opposition in the Official Gazette. Exh. 14.

Dated: December 18, 2017

                                    Respectfully submitted,

                                    /s/ Arthur W. Leach
                                    Arthur W. Leach
                                    Georgia Bar No. 442025
                                    C.L. Parker
                                    Georgia Bar No. 722011

**The Law Office of Arthur W. Leach**
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
(404) 786-6443
art@arthurwleach.com
cl@clparkerllc.com
*Counsel for Plaintiff Hi-Tech Pharmaceuticals, Inc.*

---

[7]

http://tmsearch.uspto.gov/bin/showfield?f=toc&state=4808%3Ay3o2k6.1.1&p_search=searchss&p_L=50&BackReference=&p_plural=yes&p_s_PARA1=&p_tagrepl%7E%3A=PARA1%24LD&expr=PARA1+AND+PARA2&p_s_PARA2=dianabol&p_tagrepl%7E%3A=PARA2%24COMB&p_op_ALL=AND&a_default=search&a_search=Submit+Query&a_search=Submit+Query (last checked Dec. 18, 2017)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 18th day of December 2017, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

/s/ Arthur W. Leach

Arthur W. Leach
Ga. Bar No. 442025
C.L. Parker
Ga. Bar No. 722011

**The Law Office of Arthur W. Leach**
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
(404) 786-6443
art@arthurwleach.com
cl@clparkerllc.com

*Counsel for Plaintiff Hi-Tech*
*Pharmaceuticals, Inc.*